FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT - 9 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

CV 18-5628

CORY HAMMOCK ,

Index No. _____

Plaintiff

COMPLAINT   JOHNSON, J.

-against-

TISCIONE, M.J.

MOVING STATE TO STATE, LLC,
And DOES 1-10,

Defendants.

**Plaintiff Cory Hammock Alleges:**

1.  Defendant Moving State To State, LLC ("Defendant" or "STS") operates a website
    through which it provides moving and relocation services. Defendant, and/or its agents
    DOES 1-10, were engaged by Plaintiff Cory Hammock ("Plaintiff") to package and
    transport belongings from Virginia to Utah. On September 10, 2018, Defendant and/or
    its agents DOES 1-10 packaged Plaintiff's belongings into a truck and then insisted on
    receiving an additional payment for their services. When Plaintiff refused, Defendant
    and/or its agents DOES 1-10 immediately departed without providing Plaintiff with a
    copy of a bill of lading, receipts, or other documentation referencing labor or service
    provided. Plaintiff has repeatedly called Defendant to ascertain the location of his
    belongings, and the identity of those people who made off with them. Defendant has not
    provided any information and refuses to assist Plaintiff and his counsel in locating his
    belongings.

## THE PARTIES

2.  Plaintiff is informed and believes, and on that basis alleges, that Defendant STS is a limited liability company organized under the laws of the State of New York, and doing substantial business in this state.

3.  The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff is informed and believes, and upon that basis alleges, that each of these unknown defendants is liable in some manner for the obligations, acts, or omissions alleged herein, or for Plaintiff's damages, or both. Plaintiff therefore sues each of these unknown defendants by his, her, or its fictitious name, and will seek leave of Court to amend this pleading to insert the true names and capacities of these unknown defendants when they become known.

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1337 because this case arises under Act of Commerce, 49 U.S.C. § 14706 (the "Carmack Amendment" to the Interstate Commerce Act) and there is in excess of $10,000 at issue.

5.  This Court has general jurisdiction over Defendant STS because it is a New York limited liability company which conducts substantial business in this state.

6.  In the alternative, the Court may exercise specific jurisdiction over Defendant STS because Defendant STS transacted business with Plaintiff within this State, and the claim arises from that business activity.

7.  The United States District Court for the Eastern District of New York is the proper venue for this action because Defendant STS is incorporated in the County of Queens.

## STATEMENT OF FACTS

8. On August 24, 2018, Plaintiff submitted information concerning his upcoming cross-country move from Alexandria, Virginia to Salt Lake City, Utah.

9. Plaintiff submitted this information to a third-party website, in order to solicit bids from authorized movers to pack, load, and transport his belongings and effects.

10. Later that same day, Plaintiff received a text message and a phone call from Grant Kennedy, a customer service representative employed by STS.

11. Mr. Kennedy represented STS as a broker and a carrier service capable of conducting a full door-to-door move for Mr. Hammock.

12. Mr. Kennedy promised that Defendant could provide boxes, packing material, and labor, all comprising STS's "platinum package."

13. On August 31, 2018, Plaintiff contracted with STS to load, pack, and transport his belongings and effects with a load date of September 9, 2018.

14. A moving team arrived at Plaintiff's domicile on September 9, 2018.

15. On September 10, 2018, at 12:30 a.m., a member of the moving team informed Plaintiff that he needed to pay $1,300-$1,400 in addition to the estimate given in the contract.

16. Plaintiff refused to pay the additional cost.

17. The same member of the moving team continued to insist on receiving the additional payment.

18. Not having received the additional money, the moving team, without notice to Plaintiff, departed with their truck loaded with Plaintiff's belongings and effects.

19. The moving team departed without providing a receipt, a bill of lading, a weight receipt, or any documentation whatsoever referencing the labor or service provided.

20. That same day, Plaintiff made multiple attempts to contact STS and Mr. Kennedy directly.

21. Eventually, Plaintiff finally managed to speak to Mr. Kennedy, who informed him that he had been correct to refuse paying additional money to the moving team.

22. Mr. Kennedy then told Plaintiff to wait for a follow-up call.

23. No such call came.

24. Plaintiff continued to call STS's customer service line, only to receive canned, unhelpful responses.

25. On September 18, 2018, Plaintiff contacted the Federal Motor Carrier Safety Administration (the "FMCSA") to lodge a complaint against STS.

26. The FMCSA informed Plaintiff that Mr. Kennedy had misrepresented STS as a carrier, and that in fact, it was registered only as a broker.

27. When Plaintiff engaged STS, STS's website held itself out as a "Moving Company That You Can Trust." A screenshot of STS's website is attached hereto as Exhibit C.

28. STS's website further advertised that STS has "teams of experienced movers [who] help[] thousands of people complete moves."

29. Plaintiff has still not recovered his belongings, and has no means of discovering where they might be.

30. On September 24, 2018, Plaintiff's counsel Bryce Jones sent to STS a demand letter, via mail and email, requesting that STS "advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what [STS] intend[s] to charge him for the final delivery price." A copy of Bryce Jones's letter to STS is attached hereto as Exhibit A.

31. The next day, STS responded to the demand letter via e-mail, disclaiming all liability and threatening to hold Plaintiff liable for attorney's fees. A copy of STS's response to the demand letter is attached hereto as Exhibit B.

32. STS further claimed in its response that Plaintiff was "well aware" of the status of his goods and other information he was seeking. They stated that that he would "continue to be informed about the move with his assigned carrier, and any information regarding his final bill is available to him."

33. Plaintiff's counsel Bryce Jones then replied via e-mail that he thought litigation might be avoided entirely if STS would just answer six simple questions in writing within 24 hours.

34. Over a week later, Plaintiff has still not received any information regarding his assigned carrier or final bill.

## FIRST CAUSE OF ACTION

### (Under the Carmack Amendment)

35. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

36. Defendant STS is engaged in interstate commerce.

37. Defendant DOES are movers engaged in interstate commerce.

38. In consideration of certain fees, Defendants agreed to transport Plaintiff's belongings and effects in interstate commerce.

39. Defendants have not lived up to their obligations under that agreement.

40. By virtue of Defendants' failure to make delivery, Plaintiff has sustained damages and Defendants are therefore liable to him under the Carmack Amendment.

## SECOND CAUSE OF ACTION
### (For Conversion)

41. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42. Defendant STS and/or its agents have intentionally interfered with Plaintiff's rights in his property.

43. Plaintiff has asserted his rights in his property against Defendant STS.

44. Defendant STS has nonetheless refused to provide him access to his belongings and effects.

45. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (For Breach of Contract)

46. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. Defendants have breached the contract by failing to deliver Plaintiff's belongings and effects to the agreed-upon address.

48. Defendants have further breached the contract by refusing to provide Plaintiff with any information whatsoever regarding the shipment of his belongings and effects.

49. While Defendant STS has seemingly expressed willingness to provide information, the behavior displayed by not returning phone calls and written inquiries is willful neglect and should be considered tantamount to a refusal to provide the information.

50. It is imperative that Defendants rectify this breach immediately and inform Plaintiff of the whereabouts of his belongings and effects.

51. Defendants' breach goes to the heart of the contract and, accordingly, Plaintiff is entitled to rescind it and recover from Defendants the purchase price paid, plus prejudgment interest and Plaintiff's damages directly and proximately caused by Defendants.

52. In the alternative, Defendants should be compelled to perform on the Contract, and Plaintiff be entitled to collect damages directly and proximately caused by Defendants incurred in compelling their performance including, but not limited to, the filing of this action.

53. Furthermore, Plaintiff should be compensated for having to live and sleep without his household belongings for a prolonged period of time.

## FOURTH CAUSE OF ACTION
### (For Negligent Misrepresentation)
### (Against All Defendants)

54. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. Alternatively, Plaintiff is informed and believes, and upon that basis alleges, that the foregoing representations made by STS regarding its carrier status were untrue and that STS made those representations without reasonable grounds for believing the representations to be true.

56. Plaintiff reasonably relied on the representations and, *inter alia*, has paid $3,827.69 to Defendants under the belief that they were a carrier.

57. As a direct and proximate result of the foregoing, Plaintiff has incurred damages in the amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**Violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.***
**New York General Business Law Section 350**

58. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. Defendants have engaged in deceptive acts and practices in the conduct of their business.

60. By misrepresenting the nature of their business, Defendants have willfully and knowingly violated New York consumer protection laws.

61. Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

62. New York General Business Law Section 350-a defines "false advertising" ad "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

63. Defendant STS has held itself out as a mover to the public.

64. It has privately asserted to Plaintiff that it is not, in fact, a mover or carrier but a broker.

65. As a direct and proximate result of STS's violation of New York General Business Law Section 350, Plaintiff has suffered an ascertainable loss and therefore seeks actual and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. On the First and Second Causes of Action under the Carmack Amendment and for conversion, against all Defendants, with Defendants ordered to (a) locate and deliver

Plaintiff's belongings and effects to the agreed-upon location, and inform Plaintiff of the same immediately, or, in the alternative, to pay Plaintiff a monetary amount an amount sufficient to compensate him for the loss of his belongings and effects; and (b) awarding punitive and exemplary damages in an amount according to proof;

2. On the Third Cause of Action for breach of contract, against all Defendants, with Defendants ordered to (a) locate and deliver Plaintiff's belongings and effects to the agreed-upon location, or, in the alternative, to pay Plaintiff a monetary amount sufficient to compensate him for the loss of his belongings and effects; and (b) awarding punitive and exemplary damages in an amount according to proof.

3. On the Fourth Cause of Action for negligent misrepresentation, compensatory damages in an amount according to proof;

4. On the Fifth Cause of Action for violation of New York statutory law, trebled compensatory damages and reasonable attorneys' fees;

5. For pre-judgment interest on all sums awarded; and

6. For such other further relief as the Court deems just and proper.

Dated: October 9, 2018

Respectfully submitted,

/s/ Bryce Jones
T. Bryce Jones, Esq.
**Jones Law Firm, P.C.**
450 7th Avenue, Suite 1408
New York, NY 10123
(212) 258-0685
bryce@joneslawnyc.com
*Counsel for Plaintiff*

# EXHIBIT A

T. Bryce Jones, Esq.
Jones Law Firm, P.C.
450 7th Ave, Ste. 1408
New York, NY 10036
(212) 258-0685
bryce@joneslawnyc.com

**J o n e s**
Law Firm P.C

September 24, 2018

Moving State to State LLC
75-42 198th Street
Fresh Meadows, NY 11366

via email: info@statetostateny.com

**RE: Cory J. Hammock; Reference No. T8485436**

To Moving State to State LLC:

Please be advised that Cory J. Hammock has retained my firm to assist him resolve a serious dispute with your company. It is our belief at the present that this need not proceed to litigation, which would be an expensive option for both parties, if your company is willing to accept responsibility for its wrongdoing and take immediate measures to rectify its mistakes. In short, your company misrepresented its status as a licensed/registered mover to our client. In addition, your subcontractors, who were supposed to move our client's belongings from Virginia to Utah, abruptly took away his household goods in a Budget rental truck without leaving any kind of receipt, bill of lading, weight ticket, or other record, in a clear breach of contract and against all industry norms and standards. Since that date, he has attempted to contact you many times about the status and whereabouts of his household goods which include many irreplaceable items, and he has been brushed off every time. Not only do we suggest that this is bad business practice, but it is also a serious breach of contract if not constituting outright theft of his property. We demand that you advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what you intend to charge him for the final delivery price.

On August 24, 2018, our client submitted information concerning his upcoming move from Alexandria, VA to Salt Lake City, UT to a third-party website in order to solicit bids from authorized movers to pack, load and transport his household goods. Later that same day, our client received both a text message and phone call from Grant Kennedy, a customer service representative employed by Moving State to State LLC ("State to State"). Mr. Kennedy represented your company as both a broker and carrier service capable of conducting a full door-to door move for our client, including furnishing boxes, packing material and labor in a nearly all-inclusive "platinum package."

On August 31, 2018, our client contracted with your company to load, pack and transport his household goods with a pack and load date of September 9, 2018. After arriving on September 9, the moving team began work. At 12:30AM on September 10, a member of the moving team informed Mr. Hammock that he needed to pay $1,300-$1,400 USD in addition to the original estimate given in the contract. Our client logically refused to pay this additional cost, as State to State had yet to produce a certified weight ticket and our client was paying by weight, not volume. This member of the moving team subsequently attempted to intimidate our client, who continued to refuse to pay the additional costs. The moving team then immediately departed without providing our client with a copy of a bill of lading, receipts, or any other documentation referencing their labor or service provided. In short, *all our client's personal belongings disappeared into the night without a trace.*

Throughout the day of September 10, 2018, our client made multiple attempts to contact your company and Mr. Kennedy, who eventually did speak to our client and informed him that he was correct to decline the additional charges and to wait for a follow-up call. Neither Mr. Kennedy nor any other representative of State to State contacted our client after this exchange, and our client continued to contact State to State's customer service line, only to receive canned, unhelpful responses.

Jones
Law Firm P.C

Exhausting all channels of direct resolution with your company, our client contacted the Federal Motor Carrier Safety Administration on September 18, 2018, and a representative informed our client that Mr. Kennedy had misrepresented Moving State to State LLC, as it is only a broker, not a broker and carrier. Later on September 18, our client's complaint with the FMCSA was filed on the National Consumer Complaint Database as complaint number 100116853. In addition, our client has contacted the Better Business Bureau with his concerns; he has yet to hear a response from your company. At this time, our client has remitted $3,827.69 of the $5,995.55 quote from your company and still does not know the location of his property, the final costs of delivery, or even the identity of the people that took his possessions. In particular, our client demands the return of certain irreplaceable items including, but not limited to: three oil paintings, one wooden chest, one cantina bar, one HP desktop computer containing proprietary information relating to his business, two wool coats, over 200 books, and his Army dress uniform.

Moving State to State LLC has engaged in a pattern of fraudulent behavior. Your company's website claims that Moving State to State LLC has "years of experience in home and commercial moving services," yet the Queens-based State to State has only existed as a corporate entity in the state of New York since April 6, 2018. Additionally, your company's website claims that "our teams of experienced movers have helped thousands of people complete moves." However, you are not a carrier. Compounded by Mr. Kennedy's false representation of Moving State to State LLC as both a carrier and broker, it is clear that your company engaged in a series of lies to mislead our client.

It is worth noting that your company is liable for the actions of your subcontractor in this matter because of how it represents itself. *Trans-Pro Logistic, Inc. v. Coby Elecs. Corp.*, No. 05-CV-1759 (CPS)(CLP), 2008 U.S. Dist. LEXIS 70555 (E.D.N.Y. Sep. 2, 2008) "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and

**Jones**
Law Firm P.C

its relationship to the shipper." Your company has consistently represented itself, in both online advertising and in its communication with our client, as both a carrier and broker. Regardless of what is written in the contract, you are therefore liable as a carrier, and our client will proceed with a lawsuit if your company does not identify the location of all of his possessions and deliver them per the contract signed by both parties. Our client looks forward to an amicable resolution of his claims.

Sincerely,

T. Bryce Jones, Esq.
Jones Law Firm, P.C.

# EXHIBIT B

To T. Bryce Jones, Esq:

Please be advised that we are aware of the situation concerning Cory J. Hammock, however your "statements" and "facts" are misinformed.

We are in fact a broker here at Moving State to State LLC, and as a brokerage list 0 trucks with the FMCSA.  We do have sister companies and carriers around the country that we give jobs to as it clearly states in the contract and was clearly portrayed to your client.  Please read this in its entirety so your client full understands his rights in this matter to go to litigation, which we are fully prepared to do.  In your email you stated,

"It is our belief at the present that this need not proceed to litigation, which would be an expensive option for both parties,"

As per the signed agreement, please advise your client of these particular articles, particularly Article 12 regarding your client ultimately paying your retainer and deposit, as well as our attorneys and court costs in the matter:

10.  Customer shall indemnify and hold harmless Moving State to State and its shareholders, directors, officers, employees, agents, and affiliates from and against any and all actions, claims, suits, liabilities, proceedings, penalties, fines, costs, and expenses (including all reasonable attorney fees) relating directly or indirectly from any breach of this agreement by the customer.

12.  In the event of any controversy arising under or relating to the interpretation or implementation of this agreement or any breach thereof, Moving State to State shall be entitled to recover all of its court costs, collection fees, expenses, and reasonable attorney's fees (including, without limitation, all pretrial, trial, and appellate proceedings), in addition to any other relief to which it may be entitled. IN the even that Moving State to State pursues the collection of any amounts due to it under this agreement, Moving State to State may recover full tariff rate on all goods and services provided, in addition to all other remedies available to it at law and in equity.

14. Motor carrier neutral arbitration program: The motor carriers neutral arbitration program has been designed to give neither party any special advantage. If a dispute arises between the carrier and the shipper, arbitration may be a mutually beneficial alternative to help resolve the dispute. Section 49 U.S.C. sections 375.211 provides that a mover must have a program in place to provide shippers with an arbitration alternative. Arbitration is optional and not required under federal law, summary of the arbitration process: Arbitration is an alternative to courtroom litigation. It provides each party to the dispute to present their case and allows a neutral third party arbitrator to make decisions as to the merit of each sides case. Arbitration subject to this agreement shall be conducted via written submissions and, subject to the arbitrators discretion, through telephonic appearance. After the initial filing fees have been paid and the arbitrator selected, the initiating party or (claimant) must submit a written brief summarizing their legal position and factual claims. All supporting documentation must be included with the initial arbitration brief. Copies of all documents must be submitted to all parties involved in the arbitration. Upon receipt of the claimants arbitration brief and supporting documents, the responding party or (respondent) will have 30 days to file their responsive arbitration brief and supporting documentation. Further deadlines and timetables are subject to the arbitrators discretion. Legal Effects; if the arbitration alternative is chosen, then any decision made by the arbitrator may be binding. Additionally, an arbitration decision may not be appealed in a court of law. All parties agree that the arbitrators decision will be based exclusively on the governing United States Federal Law without regard to conflicting state laws or regulations. Applicable costs each party is responsible for their own cost associated with arbitration. A benefit to the arbitration alternative may be that it is less expensive than traditional litigation. Each party is responsible for 50% of the cost associated with securing the arbitrator and 100% of their own expenses, including but not limited to attorney fees.

"In short, your company misrepresented its status as a licensed/registered mover to our client."

This statement is based upon misinformation given to you by your client. We neither misrepresented ourselves nor misled your client. We CLEARLY state we are a broker, in the contract under Article 4, and our representatives are properly trained to clearly state that we are a Broker, who are only affiliated with Carriers, but are completely separate companies with completely different D.O.T. Numbers. As all of our carriers are. We inform our customers to search our Broker D.O.T. number on Safer Web on every sale. For your customer to "claim" we misinformed him, it is also CLEARLY written multiple times in the contract, and directly informs all of our customers in Article 4 of the signed contract:

4. Customer has hired Moving State to State as their moving coordinator/broker/shipper agent, not to handle or otherwise participate in the move as labor or carrier in acting as a shipper agent only, Moving State to State is not responsible for any acts or omissions of the carrier or its employees or agents. Customer must pursue the carrier for all claims for property damage, personal injury, or death, including without limitation, any claims for damage to property, stolen goods, lost items, delayed pickup or delivery, actions of estimators, drivers, packers, or movers. Moving State to State will act on behalf of the customer in resolving any claims or delay issues with the carrier, the carrier's maximum liability is limited to the lesser of the following: (A) The amount of the actual loss or damage, (B) An amount equal to sixty cents (60 cents) per pound multiplied by the actual weight (in pounds) of the lost or damaged article; or (C) the lump sum declared value.

As a broker, we are fully bonded and insured through Pacific Financial. Our records there are public information and we welcome you to investigate that on your own.   However, anything regarding delivery times, damages, losses, or delays has nothing to do with our company.

"Not only do we suggest that this is bad business practice, but it is also a serious breach of contract if not Constituting outright theft of his property. We demand that you advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what you intend to charge him for the final delivery price."

Know that we do appreciate your suggestions and your opinions on business practices, however Suggestions and Opinions are not in the contract. The facts are that there were no breach of contracts, we upheld our end of the agreement as your clients moving Broker 100% and will continue to do so.  In our industry, delays, damages, losses, or injuries may only apply to the Carrier as clearly stated in Article 13 of the contract:

13. All pickup, load and/or delivery dates are estimates. Moving State to State is not responsible for loss or damage incurred by unavoidable delay, Moving State to State will always act on behalf of the customer in resolving any claims or delay issues with the assigned carrier. There are absolutely no guarantees made, expressed or implied regarding time for packing, loading, and/or delivery dates.

We have answered every phone call and updated your client every step of the way, whether the news he heard was what he wanted to hear or not, he did in fact receive the information asked for.  We have provided him with the carriers name, phone numbers, emails, and any other information along the way.  We have records of these phone calls and emails.  These can be provided to you if you decide to go to litigation.

You also stated:

"Your company's website claims that Moving State to State LLC has "years of experience in home and commercial moving services,"yet the Queens-based State to State has only existed as a corporate entity in the state of New York since April 6, 2018. Additionally, your company's website claims that "our teams of experienced movers have helped thousands of people complete moves." However, you are not a carrier. Compounded by Mr. Kennedy's false representation of Moving State to State LLC as both a carrier and broker, it is clear that your company engaged in a series of lies to mislead our client."

Your interpretation of the literature on our website is also flawed.  We do appreciate how you would like to interpret this literature to best suit your clients claims, however we HAVE "helped" thousands of clients complete moves, and we do have years and years of experience as a whole in our company, regardless of the timeline of the company as an entity.  You are really reaching far on this one for a lifeline in your defense, however it will not hold up.  You are being misleading in this paragraph to suggest that this literature on our website is a negative thing.  We do appreciate you visiting our website.

Pertaining to the final paragraph of your email:

"Trans-Pro Logistic, Inc. v. Coby Elecs. Corp., No. 05-CV-1759 (CPS)(CLP), 2008 U.S. Dist. LEXIS 70555 (E.D.N.Y. Sep. 2, 2008) "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." Your company has consistently represented itself, in both online advertising and in its communication with our client, as both a carrier and broker. Regardless of what is written in the contract, you are therefore liable as a carrier."

Again, we clearly state we are a broker to the "world", as our representatives clearly state we are a broker, and our contract states it to the "world" and more importantly, your client, in Article 4:

4. Customer has hired Moving State to State as their moving coordinator/broker/shipper agent, not to handle or otherwise participate in the move as labor or carrier in acting as a shipper agent only, Moving State to State is not responsible for any acts or omissions of the carrier or its employees or agents. Customer must pursue the carrier for all claims for property damage, personal injury, or death, including without limitation, any claims for damage to property, stolen goods, lost items, delayed pickup or delivery, actions of estimators, drivers, packers, or movers. Moving State to State will act on behalf of the customer in resolving any claims or delay issues with the carrier, the carrier's maximum liability is limited to the lesser of the following: (A) The amount of the actual loss or damage, (B) An amount equal to sixty cents (60 cents) per pound multiplied by the actual weight (in pounds) of the lost or damaged article; or (C) the lump sum declared value.

So, as we clearly state ourselves to the world as a broker, who obviously has relationships with multiple carriers, this would null and void any further attention to this statement.

Unfortunately all of these accusations are merely hearsay, and borderline slander with your claims of "theft". I strongly suggest your client, as well as yourself, take a stronger look at the contract signed. It's funny that you believe the statement "Regardless of what is written in the contract...", unfortunately the only thing that matters is what is written in the contract. Please advise your client we will not only continue to inform him of his delivery information, he is well aware of the final balance and may call at any time to hear it again or get documentation once again showing him this balance, and we will 100% assist him with the assigned carrier to finish out his move. Also advise him we are fully prepared to allow this to go to litigation at the cost of your client when all is said and done. Your client has a signed contract with our company, and this will be presented in court. This includes Article 12:

12. In the event of any controversy arising under or relating to the interpretation or implementation of this agreement or any breach thereof, Moving State to State shall be entitled to recover all of its court costs, collection fees, expenses, and reasonable attorney's fees (including, without limitation, all pretrial, trial, and appellate proceedings), in addition to any other relief to which it may be entitled. IN the even that Moving State to State pursues the collection of any amounts due to it under this agreement, Moving State to State may recover full tariff rate on all goods and services provided, in addition to all other remedies available to it at law and in equity.

Advise your client that we are prepared to fight this matter, and all the court fees and attorney fees from our end will be sent to him. Either way, your client will continue to be informed about the move with his assigned carrier, and any information regarding his final bill is available to him.

With all of this knowledge, we would love to move on amicably by resolving the final balance with your client, and informing the carrier to finish out the move. Nothing was stolen, no contracts were breached, and as a broker, Moving State to State, LLC is prepared to fight this in court.

Sincerely,

Moving State to State, LLC

# EXHIBIT C

# STATE TO STATE NY MOVING

MOVING COMPANY THAT YOU CAN TRUST

HOME   ABOUT   CONTACT



STATE TO STATE MOVING IS BASED IN QUEENS NEW YORK AND PROVIDE QUALITY MOVING SERVICES.
FROM LOCAL SERVICES IN THE CITY TO TRI-STATES OR LONG DISTANCE MOVES.
WE COVER THE EAST COAST, MID WEST AND THE WEST COAST..WE COVER IT ALL



## MOVING WITH CARE

EVERY ITEM IS PACKED CAREFULLY
WITH SPECIAL HANDLING.  WE PROVIDE
FULL LINE OF PACKING MATERIALS TO
PROTECT YOU BELONGING.

## ON-SITE ESTIMATE

WE PROVIDE ON-SITE ESTIMATE AT
YOUR LOCATION AND PROVIDE
ACCURATE ESTIMATE BASED ON THE
ITEMS YOU NEED TO TRANSPORT

## A-Z COMPLETE SERVICE

 WE OFFER A COMPLETE WRAPPING,
PACKING AND MOVING SERVICES FROM
DOOR TO DOOR. WE ALSO DISASSEMLE
FURNITURE AND PUT THEM TOGETHER
UPON DELIVERY.

State To State NY Moving © 2018

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

CORY HAMMOCK,                                      Index No. _____

                          Plaintiff               **Affirmation of Tanner Bryce**
                                                   **Jones in Support of**
                                                   **Plaintiff's Order to Show**
                                                   **Cause**

        -against-

MOVING STATE TO STATE, LLC,
And DOES 1-10,

                          Defendants.

---

     TANNER BRYCE JONES, an attorney duly admitted to practice law in the State of New York and in good standing hereby affirms that the following is true under penalties of perjury:

    1.  I am the principal in the law firm Jones Law, P.C., attorneys for Plaintiff Cory Hammock in the above-captioned matter.  I make this affirmation on behalf of Plaintiff in support of his order to show cause containing a temporary restraining order and brining on a motion, pursuant to Article 63 of the Civil Practice Law and Rules, to preliminarily enjoined defendants Moving State to State, LLC, and any agent action at their direction, and those acting in concert with them, from selling, transferring, or in any way exerting dominion over Plaintiff's belongings and effects, which comprise the gravamen of this action.   Plaintiff further requests that Defendants be ordered to deliver Plaintiff's belongings and effects to the agreed-upon location, and to disclose the identity of any and all agents retained by or on behalf of Defendants related to this matter.

2.   In support of this Order to Show Cause, the following documents are being submitted, all of which are attached hereto and all of which are relied upon in making this affirmation.

    a.   Attached as Exhibit D is the Affidavit of Cory Hammock, the Plaintiff in this matter, and attached to such affidavit are:

        i.   Exhibit 1, which is a Certificate of Conformity as may be required to assure the Court that the notarization conforms with the law in the state where the Affidavit was signed.

    b.   Attached as Exhibit A is a demand letter I sent to Defendant Moving State to State, LLC on September 24, 2018.

    c.   Attached as Exhibit B is a response I received from Defendant Moving State to State, LLC on September 25, 2018.

3.   As reflected in the foregoing exhibits, and all pleadings had herein, Defendants and/or their agents have taken Plaintiff's property and have not given Plaintiff any information regarding the whereabouts of his belongings despite repeated requests for the same.

4.   As reflected in Exhibits A and B, Plaintiff and I have attempted to resolve this matter amicably without resort to litigation.

5.   Defendants could have simply informed Plaintiff of the status of his belongings and effects, but their recalcitrance indicates that Plaintiff's belongings and effects are in imminent jeopardy of being lost, stolen, or transferred without his authorization.

6.   In light of the foregoing, and Defendants' demonstrated intent to continue to keep

Plaintiff's belongings from him. Plaintiff urges this Court to grant his request for a Temporary Restraining Order and Preliminary Injunction.

7.   No prior application has been made for the relief herein requested.

**WHEREFORE, I respectfully request,** on behalf of Plaintiff Cory Hammock, that the Court enter the preliminary injunction proposed by Plaintiff in the instant application.

Tanner Bryce Jones

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

CORY HAMMOCK,                                          Index No. _____

                        Plaintiff                     **Affidavit of Cory Hammock
                                                      in Support of Plaintiff's
                                                      Order to Show Cause**

        -against-

MOVING STATE TO STATE, LLC,
And DOES 1-10,

                        Defendants.

Cory Hammock, being duly sworn, deposes and says:

1.  I am the Plaintiff in this action, and I make this affidavit based on my personal
    knowledge, and a review of my records relating to this matter.

2.  I submit this affidavit in support of my Order to Show Cause seeking a Temporary
    Restraining Order ("TRO") and preliminary injunction to prevent the Defendants
    from unlawfully transferring my property, and to return my belongings and effects
    to me.

3.  In September, 2018, I moved from Virginia to Utah.

4.  I have reviewed the Complaint in this action, and swear herein to all facts alleged
    in the Complaint.

5.  Defendant Moving State to State, LLC held itself out to me as a moving company
    with "teams" of movers.

6.  Defendant Moving State to State, LLC now disclaims its status as a carrier, and insists it is only a broker.

7.  Whatever Defendant Moving State to State, LLC's status, I still am not in possession of my belongings and effects, and do not know when or whether any entity will deliver my belongings and effects to the agreed-upon location.

8.  In light of Defendant Moving State to State's conduct, I am fearful that all of my possessions have been lost, and it is urgent that Defendant Moving State to State, LLC be ordered to disclose the identity of any entity in possession of my goods, and take reasonable steps to deliver the same.

9.  If Defendant Moving State to State, LLC, and its agents or entities acting on its behalf are not directed to provide the requested relief, I will suffer great and irreparable harm.


**WHEREFORE, I respectfully request,** on behalf of Plaintiff Cory Hammock, that the Court enter the preliminary injunction proposed in the instant application.


Cory Hammock

STATE OF UTAH               )
                           :ss
COUNTY OF SALT LAKE  )

Subscribed and sworn to before me by CORY HAMMOCK this 4th day of October, 2018.

_____
NOTARY PUBLIC

JAMIE LONG
NOTARY PUBLIC·STATE OF UTAH
COMMISSION# 683508
COMM. EXP. 06-22-2019

# EXHIBIT 1

## CERTIFICATE OF CONFORMITY

I, Jennifer M. Davenport, an attorney-at-law of the State of Utah who resides in the State of Utah and is fully acquainted with the laws of the State of Utah pertaining to the acknowledgement or proof of deeds of real property to be recorded therein, do hereby certify that I am duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York and hereby certify that the acknowledgement or proof upon the foregoing document was taken by Jamie Long, a notary public in the State of Utah, in the manner prescribed by the laws of the State of Utah and conforms to the laws thereof in all respects.

IN WITNESS WHEREOF, I have hereunto set my signature, this 4th day of October, 2018.

Jennifer M. Davenport
[Signature]