# EXHIBIT A

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT - 9 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

**CV 18-5628**

CORY HAMMOCK ,

Index No. _____

Plaintiff

COMPLAINT    **JOHNSON, J.**

-against-

**TISCIONE, M.J.**

MOVING STATE TO STATE, LLC,
And DOES 1-10,

Defendants.

**Plaintiff Cory Hammock Alleges:**

1. Defendant Moving State To State, LLC ("Defendant" or "STS") operates a website through which it provides moving and relocation services. Defendant, and/or its agents DOES 1-10, were engaged by Plaintiff Cory Hammock ("Plaintiff") to package and transport belongings from Virginia to Utah. On September 10, 2018, Defendant and/or its agents DOES 1-10 packaged Plaintiff's belongings into a truck and then insisted on receiving an additional payment for their services. When Plaintiff refused, Defendant and/or its agents DOES 1-10 immediately departed without providing Plaintiff with a copy of a bill of lading, receipts, or other documentation referencing labor or service provided. Plaintiff has repeatedly called Defendant to ascertain the location of his belongings, and the identity of those people who made off with them. Defendant has not provided any information and refuses to assist Plaintiff and his counsel in locating his belongings.

## THE PARTIES

2. Plaintiff is informed and believes, and on that basis alleges, that Defendant STS is a limited liability company organized under the laws of the State of New York, and doing substantial business in this state.

3. The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants named herein as Does 1 through 10, inclusive, are unknown to Plaintiff. Plaintiff is informed and believes, and upon that basis alleges, that each of these unknown defendants is liable in some manner for the obligations, acts, or omissions alleged herein, or for Plaintiff's damages, or both. Plaintiff therefore sues each of these unknown defendants by his, her, or its fictitious name, and will seek leave of Court to amend this pleading to insert the true names and capacities of these unknown defendants when they become known.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1337 because this case arises under Act of Commerce, 49 U.S.C. § 14706 (the "Carmack Amendment" to the Interstate Commerce Act) and there is in excess of $10,000 at issue.

5. This Court has general jurisdiction over Defendant STS because it is a New York limited liability company which conducts substantial business in this state.

6. In the alternative, the Court may exercise specific jurisdiction over Defendant STS because Defendant STS transacted business with Plaintiff within this State, and the claim arises from that business activity.

7. The United States District Court for the Eastern District of New York is the proper venue for this action because Defendant STS is incorporated in the County of Queens.

## STATEMENT OF FACTS

8.  On August 24, 2018, Plaintiff submitted information concerning his upcoming cross-country move from Alexandria, Virginia to Salt Lake City, Utah.

9.  Plaintiff submitted this information to a third-party website, in order to solicit bids from authorized movers to pack, load, and transport his belongings and effects.

10. Later that same day, Plaintiff received a text message and a phone call from Grant Kennedy, a customer service representative employed by STS.

11. Mr. Kennedy represented STS as a broker and a carrier service capable of conducting a full door-to-door move for Mr. Hammock.

12. Mr. Kennedy promised that Defendant could provide boxes, packing material, and labor, all comprising STS's "platinum package."

13. On August 31, 2018, Plaintiff contracted with STS to load, pack, and transport his belongings and effects with a load date of September 9, 2018.

14. A moving team arrived at Plaintiff's domicile on September 9, 2018.

15. On September 10, 2018, at 12:30 a.m., a member of the moving team informed Plaintiff that he needed to pay $1,300-$1,400 in addition to the estimate given in the contract.

16. Plaintiff refused to pay the additional cost.

17. The same member of the moving team continued to insist on receiving the additional payment.

18. Not having received the additional money, the moving team, without notice to Plaintiff, departed with their truck loaded with Plaintiff's belongings and effects.

19. The moving team departed without providing a receipt, a bill of lading, a weight receipt, or any documentation whatsoever referencing the labor or service provided.

20. That same day, Plaintiff made multiple attempts to contact STS and Mr. Kennedy directly.

21. Eventually, Plaintiff finally managed to speak to Mr. Kennedy, who informed him that he had been correct to refuse paying additional money to the moving team.

22. Mr. Kennedy then told Plaintiff to wait for a follow-up call.

23. No such call came.

24. Plaintiff continued to call STS's customer service line, only to receive canned, unhelpful responses.

25. On September 18, 2018, Plaintiff contacted the Federal Motor Carrier Safety Administration (the "FMCSA") to lodge a complaint against STS.

26. The FMCSA informed Plaintiff that Mr. Kennedy had misrepresented STS as a carrier, and that in fact, it was registered only as a broker.

27. When Plaintiff engaged STS, STS's website held itself out as a "Moving Company That You Can Trust." A screenshot of STS's website is attached hereto as Exhibit C.

28. STS's website further advertised that STS has "teams of experienced movers [who] help[] thousands of people complete moves."

29. Plaintiff has still not recovered his belongings, and has no means of discovering where they might be.

30. On September 24, 2018, Plaintiff's counsel Bryce Jones sent to STS a demand letter, via mail and email, requesting that STS "advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what [STS] intend[s] to charge him for the final delivery price." A copy of Bryce Jones's letter to STS is attached hereto as Exhibit A.

31. The next day, STS responded to the demand letter via e-mail, disclaiming all liability and threatening to hold Plaintiff liable for attorney's fees. A copy of STS's response to the demand letter is attached hereto as Exhibit B.

32. STS further claimed in its response that Plaintiff was "well aware" of the status of his goods and other information he was seeking. They stated that that he would "continue to be informed about the move with his assigned carrier, and any information regarding his final bill is available to him."

33. Plaintiff's counsel Bryce Jones then replied via e-mail that he thought litigation might be avoided entirely if STS would just answer six simple questions in writing within 24 hours.

34. Over a week later, Plaintiff has still not received any information regarding his assigned carrier or final bill.

## FIRST CAUSE OF ACTION

### (Under the Carmack Amendment)

35. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

36. Defendant STS is engaged in interstate commerce.

37. Defendant DOES are movers engaged in interstate commerce.

38. In consideration of certain fees, Defendants agreed to transport Plaintiff's belongings and effects in interstate commerce.

39. Defendants have not lived up to their obligations under that agreement.

40. By virtue of Defendants' failure to make delivery, Plaintiff has sustained damages and Defendants are therefore liable to him under the Carmack Amendment.

## SECOND CAUSE OF ACTION
### (For Conversion)

41. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42. Defendant STS and/or its agents have intentionally interfered with Plaintiff's rights in his property.

43. Plaintiff has asserted his rights in his property against Defendant STS.

44. Defendant STS has nonetheless refused to provide him access to his belongings and effects.

45. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (For Breach of Contract)

46. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

47. Defendants have breached the contract by failing to deliver Plaintiff's belongings and effects to the agreed-upon address.

48. Defendants have further breached the contract by refusing to provide Plaintiff with any information whatsoever regarding the shipment of his belongings and effects.

49. While Defendant STS has seemingly expressed willingness to provide information, the behavior displayed by not returning phone calls and written inquiries is willful neglect and should be considered tantamount to a refusal to provide the information.

50. It is imperative that Defendants rectify this breach immediately and inform Plaintiff of the whereabouts of his belongings and effects.

51. Defendants' breach goes to the heart of the contract and, accordingly, Plaintiff is entitled to rescind it and recover from Defendants the purchase price paid, plus prejudgment interest and Plaintiff's damages directly and proximately caused by Defendants.

52. In the alternative, Defendants should be compelled to perform on the Contract, and Plaintiff be entitled to collect damages directly and proximately caused by Defendants incurred in compelling their performance including, but not limited to, the filing of this action.

53. Furthermore, Plaintiff should be compensated for having to live and sleep without his household belongings for a prolonged period of time.

## FOURTH CAUSE OF ACTION
### (For Negligent Misrepresentation)
### (Against All Defendants)

54. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. Alternatively, Plaintiff is informed and believes, and upon that basis alleges, that the foregoing representations made by STS regarding its carrier status were untrue and that STS made those representations without reasonable grounds for believing the representations to be true.

56. Plaintiff reasonably relied on the representations and, *inter alia*, has paid $3,827.69 to Defendants under the belief that they were a carrier.

57. As a direct and proximate result of the foregoing, Plaintiff has incurred damages in the amount to be determined at trial.

## FIFTH CAUSE OF ACTION

**Violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*
New York General Business Law Section 350**

58. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. Defendants have engaged in deceptive acts and practices in the conduct of their business.

60. By misrepresenting the nature of their business, Defendants have willfully and knowingly violated New York consumer protection laws.

61. Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

62. New York General Business Law Section 350-a defines "false advertising" ad "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

63. Defendant STS has held itself out as a mover to the public.

64. It has privately asserted to Plaintiff that it is not, in fact, a mover or carrier but a broker.

65. As a direct and proximate result of STS's violation of New York General Business Law Section 350, Plaintiff has suffered an ascertainable loss and therefore seeks actual and punitive damages.


### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. On the First and Second Causes of Action under the Carmack Amendment and for conversion, against all Defendants, with Defendants ordered to (a) locate and deliver

Plaintiff's belongings and effects to the agreed-upon location, and inform Plaintiff of the same immediately, or, in the alternative, to pay Plaintiff a monetary amount an amount sufficient to compensate him for the loss of his belongings and effects; and (b) awarding punitive and exemplary damages in an amount according to proof;

2. On the Third Cause of Action for breach of contract, against all Defendants, with Defendants ordered to (a) locate and deliver Plaintiff's belongings and effects to the agreed-upon location, or, in the alternative, to pay Plaintiff a monetary amount sufficient to compensate him for the loss of his belongings and effects; and (b) awarding punitive and exemplary damages in an amount according to proof.

3. On the Fourth Cause of Action for negligent misrepresentation, compensatory damages in an amount according to proof;

4. On the Fifth Cause of Action for violation of New York statutory law, trebled compensatory damages and reasonable attorneys' fees;

5. For pre-judgment interest on all sums awarded; and

6. For such other further relief as the Court deems just and proper.

Dated: October 9, 2018

Respectfully submitted,

/s/ Bryce Jones
T. Bryce Jones, Esq.
**Jones Law Firm, P.C.**
450 7th Avenue, Suite 1408
New York, NY 10123
(212) 258-0685
bryce@joneslawnyc.com
*Counsel for Plaintiff*

# EXHIBIT A

T. Bryce Jones, Esq.
Jones Law Firm, P.C.
450 7th Ave, Ste. 1408
New York, NY 10036
(212) 258-0685
bryce@joneslawnyc.com

**J o n e s**
Law Firm P.C

September 24, 2018

Moving State to State LLC
75-42 198th Street
Fresh Meadows, NY 11366

via email: info@statetostateny.com

**RE: Cory J. Hammock; Reference No. T8485436**

To Moving State to State LLC:

Please be advised that Cory J. Hammock has retained my firm to assist him resolve a serious dispute with your company. It is our belief at the present that this need not proceed to litigation, which would be an expensive option for both parties, if your company is willing to accept responsibility for its wrongdoing and take immediate measures to rectify its mistakes. In short, your company misrepresented its status as a licensed/registered mover to our client. In addition, your subcontractors, who were supposed to move our client's belongings from Virginia to Utah, abruptly took away his household goods in a Budget rental truck without leaving any kind of receipt, bill of lading, weight ticket, or other record, in a clear breach of contract and against all industry norms and standards. Since that date, he has attempted to contact you many times about the status and whereabouts of his household goods which include many irreplaceable items, and he has been brushed off every time. Not only do we suggest that this is bad business practice, but it is also a serious breach of contract if not constituting outright theft of his property. We demand that you advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what you intend to charge him for the final delivery price.

**J o n e s**
Law Firm P.C

On August 24, 2018, our client submitted information concerning his upcoming move from Alexandria, VA to Salt Lake City, UT to a third-party website in order to solicit bids from authorized movers to pack, load and transport his household goods. Later that same day, our client received both a text message and phone call from Grant Kennedy, a customer service representative employed by Moving State to State LLC ("State to State"). Mr. Kennedy represented your company as both a broker and carrier service capable of conducting a full door-to door move for our client, including furnishing boxes, packing material and labor in a nearly all-inclusive "platinum package."

On August 31, 2018, our client contracted with your company to load, pack and transport his household goods with a pack and load date of September 9, 2018. After arriving on September 9, the moving team began work. At 12:30AM on September 10, a member of the moving team informed Mr. Hammock that he needed to pay $1,300-$1,400 USD in addition to the original estimate given in the contract. Our client logically refused to pay this additional cost, as State to State had yet to produce a certified weight ticket and our client was paying by weight, not volume. This member of the moving team subsequently attempted to intimidate our client, who continued to refuse to pay the additional costs. The moving team then immediately departed without providing our client with a copy of a bill of lading, receipts, or any other documentation referencing their labor or service provided. In short, *all our client's personal belongings disappeared into the night without a trace.*

Throughout the day of September 10, 2018, our client made multiple attempts to contact your company and Mr. Kennedy, who eventually did speak to our client and informed him that he was correct to decline the additional charges and to wait for a follow-up call. Neither Mr. Kennedy nor any other representative of State to State contacted our client after this exchange, and our client continued to contact State to State's customer service line, only to receive canned, unhelpful responses.

Exhausting all channels of direct resolution with your company, our client contacted the Federal Motor Carrier Safety Administration on September 18, 2018, and a representative informed our client that Mr. Kennedy had misrepresented Moving State to State LLC, as it is only a broker, not a broker and carrier. Later on September 18, our client's complaint with the FMCSA was filed on the National Consumer Complaint Database as complaint number 100116853. In addition, our client has contacted the Better Business Bureau with his concerns; he has yet to hear a response from your company. At this time, our client has remitted $3,827.69 of the $5,995.55 quote from your company and still does not know the location of his property, the final costs of delivery, or even the identity of the people that took his possessions. In particular, our client demands the return of certain irreplaceable items including, but not limited to: three oil paintings, one wooden chest, one cantina bar, one HP desktop computer containing proprietary information relating to his business, two wool coats, over 200 books, and his Army dress uniform.

Moving State to State LLC has engaged in a pattern of fraudulent behavior. Your company's website claims that Moving State to State LLC has "years of experience in home and commercial moving services," yet the Queens-based State to State has only existed as a corporate entity in the state of New York since April 6, 2018. Additionally, your company's website claims that "our teams of experienced movers have helped thousands of people complete moves." However, you are not a carrier. Compounded by Mr. Kennedy's false representation of Moving State to State LLC as both a carrier and broker, it is clear that your company engaged in a series of lies to mislead our client.

It is worth noting that your company is liable for the actions of your subcontractor in this matter because of how it represents itself. *Trans-Pro Logistic, Inc. v. Coby Elecs. Corp.*, No. 05-CV-1759 (CPS)(CLP), 2008 U.S. Dist. LEXIS 70555 (E.D.N.Y. Sep. 2, 2008) "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and

**Jones**
Law Firm P.C

its relationship to the shipper." Your company has consistently represented itself, in both online advertising and in its communication with our client, as both a carrier and broker. Regardless of what is written in the contract, you are therefore liable as a carrier, and our client will proceed with a lawsuit if your company does not identify the location of all of his possessions and deliver them per the contract signed by both parties. Our client looks forward to an amicable resolution of his claims.

Sincerely,

T. Bryce Jones, Esq.
Jones Law Firm, P.C.

# EXHIBIT B

To T. Bryce Jones, Esq:

Please be advised that we are aware of the situation concerning Cory J. Hammock, however your "statements" and "facts" are misinformed.

We are in fact a broker here at Moving State to State LLC, and as a brokerage list 0 trucks with the FMCSA. We do have sister companies and carriers around the country that we give jobs to as it clearly states in the contract and was clearly portrayed to your client. Please read this in its entirety so your client full understands his rights in this matter to go to litigation, which we are fully prepared to do. In your email you stated,

"It is our belief at the present that this need not proceed to litigation, which would be an expensive option for both parties,"

As per the signed agreement, please advise your client of these particular articles, particularly Article 12 regarding your client ultimately paying your retainer and deposit, as well as our attorneys and court costs in the matter:

10. Customer shall indemnify and hold harmless Moving State to State and its shareholders, directors, officers, employees, agents, and affiliates from and against any and all actions, claims, suits, liabilities, proceedings, penalties, fines, costs, and expenses (including all reasonable attorney fees) relating directly or indirectly from any breach of this agreement by the customer.

12. In the event of any controversy arising under or relating to the interpretation or implementation of this agreement or any breach thereof, Moving State to State shall be entitled to recover all of its court costs, collection fees, expenses, and reasonable attorney's fees (including, without limitation, all pretrial, trial, and appellate proceedings), in addition to any other relief to which it may be entitled. IN the even that Moving State to State pursues the collection of any amounts due to it under this agreement, Moving State to State may recover full tariff rate on all goods and services provided, in addition to all other remedies available to it at law and in equity.

14. Motor carrier neutral arbitration program: The motor carriers neutral arbitration program has been designed to give neither party any special advantage. If a dispute arises between the carrier and the shipper, arbitration may be a mutually beneficial alternative to help resolve the dispute. Section 49 U.S.C. sections 375.211 provides that a mover must have a program in place to provide shippers with an arbitration alternative. Arbitration is optional and not required under federal law, summary of the arbitration process: Arbitration is an alternative to courtroom litigation. It provides each party to the dispute to present their case and allows a neutral third party arbitrator to make decisions as to the merit of each sides case. Arbitration subject to this agreement shall be conducted via written submissions and, subject to the arbitrators discretion, through telephonic appearance. After the initial filing fees have been paid and the arbitrator selected, the initiating party or (claimant) must submit a written brief summarizing their legal position and factual claims. All supporting documentation must be included with the initial arbitration brief. Copies of all documents must be submitted to all parties involved in the arbitration. Upon receipt of the claimants arbitration brief and supporting documents, the responding party or (respondent) will have 30 days to file their responsive arbitration brief and supporting documentation. Further deadlines and timetables are subject to the arbitrators discretion. Legal Effects; if the arbitration alternative is chosen, then any decision made by the arbitrator may be binding. Additionally, an arbitration decision may not be appealed in a court of law. All parties agree that the arbitrators decision will be based exclusively on the governing United States Federal Law without regard to conflicting state laws or regulations. Applicable costs each party is responsible for their own cost associated with arbitration. A benefit to the arbitration alternative may be that it is less expensive than traditional litigation. Each party is responsible for 50% of the cost associated with securing the arbitrator and 100% of their own expenses, including but not limited to attorney fees.

"In short, your company misrepresented its status as a licensed/registered mover to our client."

This statement is based upon misinformation given to you by your client. We neither misrepresented ourselves nor misled your client. We CLEARLY state we are a broker, in the contract under Article 4, and our representatives are properly trained to clearly state that we are a Broker, who are only affiliated with Carriers, but are completely separate companies with completely different D.O.T. Numbers. As all of our carriers are. We inform our customers to search our Broker D.O.T. number on Safer Web on every sale. For your customer to "claim" we misinformed him, it is also CLEARLY written multiple times in the contract, and directly informs all of our customers in Article 4 of the signed contract:

4. Customer has hired Moving State to State as their moving coordinator/broker/shipper agent, not to handle or otherwise participate in the move as labor or carrier in acting as a shipper agent only, Moving State to State is not responsible for any acts or omissions of the carrier or its employees or agents. Customer must pursue the carrier for all claims for property damage, personal injury, or death, including without limitation, any claims for damage to property, stolen goods, lost items, delayed pickup or delivery, actions of estimators, drivers, packers, or movers. Moving State to State will act on behalf of the customer in resolving any claims or delay issues with the carrier, the carrier's maximum liability is limited to the lesser of the following: (A) The amount of the actual loss or damage, (B) An amount equal to sixty cents (60 cents) per pound multiplied by the actual weight (in pounds) of the lost or damaged article; or (C) the lump sum declared value.

As a broker, we are fully bonded and insured through Pacific Financial. Our records there are public information and we welcome you to investigate that on your own. However, anything regarding delivery times, damages, losses, or delays has nothing to do with our company.

"Not only do we suggest that this is bad business practice, but it is also a serious breach of contract if not Constituting outright theft of his property. We demand that you advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what you intend to charge him for the final delivery price."

Know that we do appreciate your suggestions and your opinions on business practices, however Suggestions and Opinions are not in the contract. The facts are that there were no breach of contracts, we upheld our end of the agreement as your clients moving Broker 100% and will continue to do so. In our industry, delays, damages, losses, or injuries may only apply to the Carrier as clearly stated in Article 13 of the contract:

13. All pickup, load and/or delivery dates are estimates. Moving State to State is not responsible for loss or damage incurred by unavoidable delay, Moving State to State will always act on behalf of the customer in resolving any claims or delay issues with the assigned carrier. There are absolutely no guarantees made, expressed or implied regarding time for packing, loading, and/or delivery dates.

We have answered every phone call and updated your client every step of the way, whether the news he heard was what he wanted to hear or not, he did in fact receive the information asked for. We have provided him with the carriers name, phone numbers, emails, and any other information along the way. We have records of these phone calls and emails. These can be provided to you if you decide to go to litigation.

You also stated:

"Your company's website claims that Moving State to State LLC has "years of experience in home and commercial moving services," yet the Queens-based State to State has only existed as a corporate entity in the state of New York since April 6, 2018. Additionally, your company's website claims that "our teams of experienced movers have helped thousands of people complete moves." However, you are not a carrier. Compounded by Mr. Kennedy's false representation of Moving State to State LLC as both a carrier and broker, it is clear that your company engaged in a series of lies to mislead our client."

Your interpretation of the literature on our website is also flawed. We do appreciate how you would like to interpret this literature to best suit your clients claims, however we HAVE "helped" thousands of clients complete moves, and we do have years and years of experience as a whole in our company, regardless of the timeline of the company as an entity. You are really reaching far on this one for a lifeline in your defense, however it will not hold up. You are being misleading in this paragraph to suggest that this literature on our website is a negative thing. We do appreciate you visiting our website.

Pertaining to the final paragraph of your email:

"Trans-Pro Logistic, Inc. v. Coby Elecs. Corp., No. 05-CV-1759 (CPS)(CLP), 2008 U.S. Dist. LEXIS 70555 (E.D.N.Y. Sep. 2, 2008) "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." Your company has consistently represented itself, in both online advertising and in its communication with our client, as both a carrier and broker. Regardless of what is written in the contract, you are therefore liable as a carrier."

Again, we clearly state we are a broker to the "world", as our representatives clearly state we are a broker, and our contract states it to the "world" and more importantly, your client, in Article 4:

4. Customer has hired Moving State to State as their moving coordinator/broker/shipper agent, not to handle or otherwise participate in the move as labor or carrier in acting as a shipper agent only, Moving State to State is not responsible for any acts or omissions of the carrier or its employees or agents. Customer must pursue the carrier for all claims for property damage, personal injury, or death, including without limitation, any claims for damage to property, stolen goods, lost items, delayed pickup or delivery, actions of estimators, drivers, packers, or movers. Moving State to State will act on behalf of the customer in resolving any claims or delay issues with the carrier, the carrier's maximum liability is limited to the lesser of the following: (A) The amount of the actual loss or damage, (B) An amount equal to sixty cents (60 cents) per pound multiplied by the actual weight (in pounds) of the lost or damaged article; or (C) the lump sum declared value.

So, as we clearly state ourselves to the world as a broker, who obviously has relationships with multiple carriers, this would null and void any further attention to this statement.

Unfortunately all of these accusations are merely hearsay, and borderline slander with your claims of "theft". I strongly suggest your client, as well as yourself, take a stronger look at the contract signed. It's funny that you believe the statement "Regardless of what is written in the contract...", unfortunately the only thing that matters is what is written in the contract. Please advise your client we will not only continue to inform him of his delivery information, he is well aware of the final balance and may call at any time to hear it again or get documentation once again showing him this balance, and we will 100% assist him with the assigned carrier to finish out his move. Also advise him we are fully prepared to allow this to go to litigation at the cost of your client when all is said and done. Your client has a signed contract with our company, and this will be presented in court. This includes Article 12:

12. In the event of any controversy arising under or relating to the interpretation or implementation of this agreement or any breach thereof, Moving State to State shall be entitled to recover all of its court costs, collection fees, expenses, and reasonable attorney's fees (including, without limitation, all pretrial, trial, and appellate proceedings), in addition to any other relief to which it may be entitled. IN the even that Moving State to State pursues the collection of any amounts due to it under this agreement, Moving State to State may recover full tariff rate on all goods and services provided, in addition to all other remedies available to it at law and in equity.

Advise your client that we are prepared to fight this matter, and all the court fees and attorney fees from our end will be sent to him. Either way, your client will continue to be informed about the move with his assigned carrier, and any information regarding his final bill is available to him.

With all of this knowledge, we would love to move on amicably by resolving the final balance with your client, and informing the carrier to finish out the move. Nothing was stolen, no contracts were breached, and as a broker, Moving State to State, LLC is prepared to fight this in court.

Sincerely,

Moving State to State, LLC

# EXHIBIT C

# STATE TO STATE NY MOVING

MOVING COMPANY THAT YOU CAN TRUST

HOME    ABOUT    CONTACT



STATE TO STATE MOVING IS BASED IN QUEENS NEW YORK AND PROVIDE QUALITY MOVING SERVICES.
FROM LOCAL SERVICES IN THE CITY TO TRI-STATES OR LONG DISTANCE MOVES.
WE COVER THE EAST COAST, MID WEST AND THE WEST COAST...WE COVER IT ALL



## MOVING WITH CARE

EVERY ITEM IS PACKED CAREFULLY
WITH SPECIAL HANDLING.  WE PROVIDE
FULL LINE OF PACKING MATERIALS TO
PROTECT YOU BELONGING.

## ON-SITE ESTIMATE

WE PROVIDE ON-SITE ESTIMATE AT
YOUR LOCATION AND PROVIDE
ACCURATE ESTIMATE BASED ON THE
ITEMS YOU NEED TO TRANSPORT

## A-Z COMPLETE SERVICE

 WE OFFER A COMPLETE WRAPPING,
PACKING AND MOVING SERVICES FROM
DOOR TO DOOR. WE ALSO DISASSEMLE
FURNITURE AND PUT THEM TOGETHER
UPON DELIVERY.

State To State NY Moving © 2018

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

_____

CORY HAMMOCK,                                    Index No. _____

                  Plaintiff          **Affirmation of Tanner Bryce
                                                 Jones in Support of
                                                 Plaintiff's Order to Show
                                                 Cause**

    -against-

MOVING STATE TO STATE, LLC,
And DOES 1-10,

               Defendants.

_____

      TANNER BRYCE JONES, an attorney duly admitted to practice law in the State of New York and in good standing hereby affirms that the following is true under penalties of perjury:

    1.  I am the principal in the law firm Jones Law, P.C., attorneys for Plaintiff Cory Hammock in the above-captioned matter. I make this affirmation on behalf of Plaintiff in support of his order to show cause containing a temporary restraining order and brining on a motion, pursuant to Article 63 of the Civil Practice Law and Rules, to preliminarily enjoined defendants Moving State to State, LLC, and any agent action at their direction, and those acting in concert with them, from selling, transferring, or in any way exerting dominion over Plaintiff's belongings and effects, which comprise the gravamen of this action. Plaintiff further requests that Defendants be ordered to deliver Plaintiff's belongings and effects to the agreed-upon location, and to disclose the identity of any and all agents retained by or on behalf of Defendants related to this matter.

2.  In support of this Order to Show Cause, the following documents are being submitted, all of which are attached hereto and all of which are relied upon in making this affirmation.

    a.  Attached as Exhibit D is the Affidavit of Cory Hammock, the Plaintiff in this matter, and attached to such affidavit are:

        i.  Exhibit 1, which is a Certificate of Conformity as may be required to assure the Court that the notarization conforms with the law in the state where the Affidavit was signed.

    b.  Attached as Exhibit A is a demand letter I sent to Defendant Moving State to State, LLC on September 24, 2018.

    c.  Attached as Exhibit B is a response I received from Defendant Moving State to State, LLC on September 25, 2018.

3.  As reflected in the foregoing exhibits, and all pleadings had herein, Defendants and/or their agents have taken Plaintiff's property and have not given Plaintiff any information regarding the whereabouts of his belongings despite repeated requests for the same.

4.  As reflected in Exhibits A and B, Plaintiff and I have attempted to resolve this matter amicably without resort to litigation.

5.  Defendants could have simply informed Plaintiff of the status of his belongings and effects, but their recalcitrance indicates that Plaintiff's belongings and effects are in imminent jeopardy of being lost, stolen, or transferred without his authorization.

6.  In light of the foregoing, and Defendants' demonstrated intent to continue to keep

Plaintiff's belongings from him. Plaintiff urges this Court to grant his request for a Temporary Restraining Order and Preliminary Injunction.

    7.   No prior application has been made for the relief herein requested.


**WHEREFORE, I respectfully request,** on behalf of Plaintiff Cory Hammock, that the Court enter the preliminary injunction proposed by Plaintiff in the instant application.



Tanner Bryce Jones

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

CORY HAMMOCK,

                Plaintiff

    -against-

MOVING STATE TO STATE, LLC,
And DOES 1-10,

                Defendants.

Index No. _____

**Affidavit of Cory Hammock
in Support of Plaintiff's
Order to Show Cause**

---

Cory Hammock, being duly sworn, deposes and says:

1. I am the Plaintiff in this action, and I make this affidavit based on my personal
   knowledge, and a review of my records relating to this matter.

2. I submit this affidavit in support of my Order to Show Cause seeking a Temporary
   Restraining Order ("TRO") and preliminary injunction to prevent the Defendants
   from unlawfully transferring my property, and to return my belongings and effects
   to me.

3. In September, 2018, I moved from Virginia to Utah.

4. I have reviewed the Complaint in this action, and swear herein to all facts alleged
   in the Complaint.

5. Defendant Moving State to State, LLC held itself out to me as a moving company
   with "teams" of movers.

6. Defendant Moving State to State, LLC now disclaims its status as a carrier, and insists it is only a broker.

7. Whatever Defendant Moving State to State, LLC's status, I still am not in possession of my belongings and effects, and do not know when or whether any entity will deliver my belongings and effects to the agreed-upon location.

8. In light of Defendant Moving State to State's conduct, I am fearful that all of my possessions have been lost, and it is urgent that Defendant Moving State to State, LLC be ordered to disclose the identity of any entity in possession of my goods, and take reasonable steps to deliver the same.

9. If Defendant Moving State to State, LLC, and its agents or entities acting on its behalf are not directed to provide the requested relief, I will suffer great and irreparable harm.

**WHEREFORE, I respectfully request,** on behalf of Plaintiff Cory Hammock, that the Court enter the preliminary injunction proposed in the instant application.

Cory Hammock

STATE OF UTAH                )
                            :ss
COUNTY OF SALT LAKE  )

     Subscribed and sworn to before me by CORY HAMMOCK this 4th day of October, 2018.

_____
NOTARY PUBLIC

JAMIE LONG
NOTARY PUBLIC • STATE OF UTAH
COMMISSION# 683508
COMM. EXP. 06-22-2019

# EXHIBIT 1

## CERTIFICATE OF CONFORMITY

I, _Jennifer M. Davenport_, an attorney-at-law of the State of ___Utah___ who resides in the State of ___Utah___ and is fully acquainted with the laws of the State of ___Utah___ pertaining to the acknowledgement or proof of deeds of real property to be recorded therein, do hereby certify that I am duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York and hereby certify that the acknowledgement or proof upon the foregoing document was taken by ___Jamie Long___, a notary public in the State of ___Utah___, in the manner prescribed by the laws of the State of ___Utah___ and conforms to the laws thereof in all respects.

IN WITNESS WHEREOF, I have hereunto set my signature, this __4th__ day of ___October___, 2018.

_Jennifer M. Davenport_
[Signature]

CV-18-5628

JS 44 (Rev. 11-15)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CORY HAMMOCK | MOVING STATE TO STATE, LLC and DOES 1-10 |

JOHNSON, J.

TISCIONE, M.J.

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant **QUEENS** |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
|  | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
T. BRYCE JONES
JONES LAW, PC
450 7th Street, Suite 1408 New York, NY 10123

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product **PERSONAL INJURY** | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability ☐ 365 Personal Injury - | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander Product Liability ☐ 367 Health Care/ Pharmaceutical | | ☐ 820 Copyrights ☐ 830 Patent | ☐ 430 Banks and Banking ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Personal Injury | | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability Product Liability ☐ 340 Marine ☐ 368 Asbestos Personal | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Injury Product Liability **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) ☐ 862 Black Lung (923) | ☐ 480 Consumer Credit ☐ 490 Cable/Sat TV |
| ☒ 160 Stockholders' Suits | Liability ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 350 Motor Vehicle ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle ☐ 380 Other Personal | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Product Liability Property Damage | Leave Act | | ☐ 893 Environmental Matters |
| | ☐ 360 Other Personal ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information |
| | Injury Product Liability | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Medical Malpractice | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | **CIVIL RIGHTS** **PRISONER PETITIONS** | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 220 Foreclosure | ☐ 440 Other Civil Rights **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 441 Voting ☐ 463 Alien Detainee | | | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 442 Employment ☐ 510 Motions to Vacate | | | State Statutes |
| ☐ 245 Tort Product Liability | ☐ 443 Housing/ Sentence | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | Accommodations ☐ 530 General | ☐ 462 Naturalization Application | | |
| | ☐ 445 Amer. w/Disabilities- ☐ 535 Death Penalty | ☐ 465 Other Immigration | | |
| | Employment **Other:** | Actions | | |
| | ☐ 446 Amer. w/Disabilities- ☐ 540 Mandamus & Other | | | |
| | Other ☐ 550 Civil Rights | | | |
| | ☐ 448 Education ☐ 555 Prison Condition | | FILED | |
| | ☐ 560 Civil Detainee - | | IN CLERK'S OFFICE | |
| | Conditions of | | U.S. DISTRICT COURT E.D.N.Y. | |
| | Confinement | | ★ OCT - 9 2018 ★ | |

## V. ORIGIN *(Place an "X" in One Box Only)*

BROOKLYN OFFICE

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

| VI. CAUSE OF ACTION | Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 49 usc 14706 |
|---|---|
| | Brief description of cause: Plaintiff brings an action against interstate carriers who have not delivered his belongings |

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. | DEMAND $ 100,000.00 | CHECK YES only if demanded in complaint: JURY DEMAND: ☐ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | *(See instructions):* JUDGE | DOCKET NUMBER |
|---|---|---|

| DATE 10/09/2018 | SIGNATURE OF ATTORNEY OF RECORD  *[signature]* |
|---|---|

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

465513 3101

# CERTIFICATION OF ARBITRATION ELIGIBILITY

Local Arbitration Rule 83.10 provides that with certain exceptions, actions seeking money damages only in an amount not in excess of $150,000, exclusive of interest and costs, are eligible for compulsory arbitration. The amount of damages is presumed to be below the threshold amount unless a certification to the contrary is filed.

Case is Eligible for Arbitration ☐

I, __T. Bryce Jones__, counsel for __Plaintiff__, do hereby certify that the above captioned civil action is ineligible for compulsory arbitration for the following reason(s):

☐  monetary damages sought are in excess of $150,000, exclusive of interest and costs.

☑  the complaint seeks injunctive relief.

☐  the matter is otherwise ineligible for the following reason

## DISCLOSURE STATEMENT - FEDERAL RULES CIVIL PROCEDURE 7.1

Identify any parent corporation and any publicly held corporation that owns 10% or more or its stocks:

## RELATED CASE STATEMENT (Section VIII on the Front of this Form)

Please list all cases that are arguably related pursuant to Division of Business Rule 50.3.1 in Section VIII on the front of this form. Rule 50.3.1 (a) provides that "A civil case is 'related' to another civil case for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge." Rule 50.3.1 (b) provides that " A civil case shall not be deemed "related" to another civil case merely because the civil case: (A) involves identical legal issues, or (B) involves the same parties." Rule 50.3.1 (c) further provides that "Presumptively, and subject to the power of a judge to determine otherwise pursuant to paragraph (d), civil cases shall not be deemed to be "related" unless both cases are still pending before the court."

## NY-E DIVISION OF BUSINESS RULE 50.1(d)(2)

1.)  Is the civil action being filed in the Eastern District removed from a New York State Court located in Nassau or Suffolk County?  ☐ Yes  ☑ No

2.)  If you answered "no" above:
a) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in Nassau or Suffolk County?  ☐ Yes  ☑ No

b) Did the events or omissions giving rise to the claim or claims, or a substantial part thereof, occur in the Eastern District?  ☑ Yes  ☐ No

c) If this is a Fair Debt Collection Practice Act case, specify the County in which the offending communication was received: _____.

If your answer to question 2 (b) is "No," does the defendant (or a majority of the defendants, if there is more than one) reside in Nassau or Suffolk County, or, in an interpleader action, does the claimant (or a majority of the claimants, if there is more than one) reside in Nassau or Suffolk County?  ☐ Yes  ☐ No
*(Note: A corporation shall be considered a resident of the County in which it has the most significant contacts).*

## BAR ADMISSION

I am currently admitted in the Eastern District of New York and currently a member in good standing of the bar of this court.

☑  Yes          ☐  No

Are you currently the subject of any disciplinary action (s) in this or any other state or federal court?

☐  Yes     (If yes, please explain     ☑  No

I certify the accuracy of all information provided above.

**Signature:** _____

Index

Civil Cover Sheet

Complaint

Exhibit A – Demand Letter

Exhibit B – Response to Demand Letter

Exhibit C – Screenshot of Website

Affirmation of T. Bryce Jones

Exhibit D – Affidavit of Cory Hammock

Exhibit 1 – Certificate of Conformity

Memorandum of Law

Affirmation of Service

Order to Show Cause

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT - 9 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

CORY HAMMOCK,

               Plaintiff

      -against-

MOVING STATE TO STATE, LLC,
And DOES 1-10,

              Defendants.

---

**CV 18-5628**

Index No.

**JOHNSON, J.**

**MEMORANDUM OF LAW
IN SUPPORT OF
PLAINTIFF'S MOTION
FOR A TEMPORARY
RESTRAINING ORDER
AND PRELIMINARY
INJUNCTION**

**TISCIONE, M.J.**

Plaintiff Cory Hammock ("Plaintiff") respectfully submits this Memorandum of Law in Support of his motion pursuant to Fed. R. Civ. P. 65(a) and (b) for a temporary restraining order and preliminary injunction against Defendants Moving State to State, LLC ("STS") and Does 1-10, unknown to Plaintiff, but who may be agents or entities acting on STS's behalf, to prevent the dissipation, sale, or destruction of his possessions in advance of judgment by (1) compelling Defendant State to State, LLC to disclose the identity of those entities or persons in possession of Mr. Hammock's belongings and (2) compelling all Defendants to act upon their agreement and deliver Mr. Hammock's belongings to the agreed-upon location.

## PRELIMINARY STATEMENT AND RELEVANT FACTUAL BACKGROUND

Plaintiff brings the instant emergency proceeding pursuant to Fed. R. Cir. P. 65 in order to finally, after several weeks, be reunited with his belongings and effects which have been unlawfully appropriated by Defendants. What was supposed to be a simple move has turned into a nightmare for Plaintiff, as Defendants have loaded all of his belongings into a truck weeks ago, and now refuse to either deliver or provide any information regarding Plaintiff's possessions. Plaintiff has attempted to resolve the situation amicably, on his own, and subsequently through counsel. Defendant STS nonetheless steadfastly refuses to live up to its end of the bargain, necessitating this proceeding while (or **if**) Plaintiff's goods are still recoverable.

In August of 2018, Plaintiff prepared for a cross-country move from Virginia to Utah. (Compl. ¶ 8).[1]  Upon submitted his moving details to a third-party website, Plaintiff received a text message and a call from a representative of STS. (Compl. ¶¶ 9-10). STS represented that it could conduct a full door-to-door move on Plaintiff's behalf, complete with boxes, packing material, and labor. (Compl. ¶ 11).

On the evening of September 9, and into the morning of September 10, a team of movers engaged by Defendant STS loaded Plaintiff's possessions into a truck. (Compl. ¶ 9). Upon loading everything, a member of the moving team informed Plaintiff that he needed to pay over a thousand dollars more than agreed upon in order to live up to his end of the contract. (Compl. ¶ 15). Plaintiff refused, and the moving team abruptly departed

---

[1] Plaintiff has submitted a sworn affidavit in support of this Motion. In that affidavit, Plaintiff has sworn to the veracity of all allegations contained within the Complaint. Therefore, all citations to factual matters will be to the Complaint in this action.

into the night with his belongings, without ever supplying him with a receipt, bill of lading, or any documentation whatsoever. (Compl. ¶¶ 18-19).

That same day, Plaintiff, concerned, contacted STS who informed him that he had been correct to refuse the additional payment, and advised him to wait for further information. (Compl. ¶¶ 20-21). Weeks later, despite several attempts to track down his belongings, Plaintiff retained counsel in order to expedite the process. (Compl. ¶¶ 29-30). Despite receiving a demand letter from counsel, STS continued to disclaim any liability for Plaintiff's missing possessions, and refused to provide any information regarding their whereabouts, or the identity of the movers who had made off with Plaintiff's goods. A TRO is the only way to make certain that Plaintiff's belongings be returned to him without being transferred, stolen, or destroyed.

## STANDARD OF REVIEW

"[T]he traditional standards which govern consideration of an application for a [TRO] . . . are the same . . . as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n. AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). The decision to grant such equitable relief rests in the district court's "sound discretion." *Ahmad v. Long Island Univ.*, 18 F.Supp.2d 245, 247 (E.D.N.Y. 1998). To obtain a preliminary injunction, a party must show: (1) likelihood of success on the merits; (2) likelihood that the moving party will suffer irreparable harm if a preliminary injunction is not granted; (3) that the balance of hardships tips in the moving party's favor; and (4) that the public interest is not disserved by the requested relief. *Salinger v. Colting*, 607 F.3d 68, 80-83 (2d Cir. 2010).

## ARGUMENT

### 1. Plaintiff is Likely to Succeed On the Merits

At the heart of the matter, this is a simple action for conversion. Under New York law, "[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 87 N.Y.2d 36, 44 (1995). This includes a "denial or violation of the plaintiff's dominion, rights, or possession" over his property. *Sporn v. MCA Records, Inc.*, 58 N.Y.2d 482, 487 (1983). Moreover, because Defendants are carrier providing interstate transportation or service. Their actions therefore constitute violation of federal law known as the Carmack Amendment, 49 U.S.C. § 14706.[2]

Plaintiff has repeatedly attempted to determine the whereabouts of his belongings. He has actively and aggressively attempted to resolve this situation amicably, first by calling all points of contact for STS, and later by engaging counsel. STS has baldly asserted its intention to not provide Plaintiff with any information regarding his possessions, or even to arrange for their delivery. Plaintiff has quite obviously been dispossessed of his possessions and is therefore likely to succeed on a conversion action.

Relying on boilerplate contract language, STS has asserted that it is not a mover, but a broker, and is therefore not responsible for Plaintiff's goods at all. See Exhibit B to Complaint). Under federal law, STS is not permitted to hide behind such nominal declarations, and must assume liability for its theft.

---

[2] The Carmack Amendment provides that a "carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation . . . . That carrier and any other carrier that delivers the property . . . are liable to the person entitled to recover under the receipt or bill of lading."

In the first place, even if STS is actually a broker, that does not disclaim its liability for negligently hiring movers who engage in theft by extortion. *See Commercial Union Ins. Co. v. Forward Air, Inc.*, 50 F.Supp.2d 255, 258 (S.D.N.Y. 1999) (internal citations omitted). Broker status is not some magic wand by which an entity can disclaim all liability for goods lost due to that broker's bad acts. *See Custom Cartage Inc. v. Motorola, Inc.*, 1999 U.S. Dist. LEXIS 1684, *8, (N.D. Ill. Feb. 16, 1999) (under federal law, brokers are not "exempt . . . for paying for their own negligence.").

But STS is not just a broker. It holds itself out as "providing commercial motor vehicle . . . transportation for compensation." 49 U.S.C. § 13102(14). It is therefore a motor carrier under black letter federal law. This is obvious on their own website, where STS prominently displays its slogan: "Moving Company That You Can Trust." See Ex. C.

How an entity holds itself out to the world is a critical element in the carrier/broker distinction. In fact, under federal statute, what an entity *offers* is dispositive, and what a reasonable buyer understands the seller to be is a critical point. *See Nipponkoa Ins. Co. v. C.H. Robinson Worldwide*, 2011 U.S. Dist. LEXIS 17752, *7, (S.D.N.Y. Feb. 18, 2011) (broker/carrier status is "determined . . . by reference to what [the entity] holds itself out to be) (internal citations omitted); *Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc.*, 303 F.Supp.2d 920, 921 (N.D.Ill. 2003) (a company's status is "not determined by how it labels itself, but by how it holds itself out to the world."); *Cgu Int'l Ins. V. Keystone Lines Corp.*, 2004 U.S.Dist. LEXIS 8123, 2004, at *5, (N.D. Cal. May 5, 2004).

Plainly, STS touts its status as a "moving company." STS's representative assured Plaintiff that STS was a broker and moving company, capable of providing full-service moves to people with his needs. (See Compl. ¶¶ 11-14). Plaintiff has had his belongings

taken away from him and will obviously succeed on the merits when it comes to recovering his belongings. Defendants are further liable under federal law, and Plaintiff is likely to succeed on the merits regarding his claims against carriers who failed to provide him with receipts, bills of lading, or even the very goods he intended to ship.

## II. Plaintiff Will Suffer Irreparable Harm Absent Injunctive Relief

Plaintiff will suffer irreparable harm if he is not given information regarding his belongings because they are unique to his life and experience, and their loss would not be compensable by money damages. To constitute "irreparable" harm, an injury must "be one incapable of being fully remedied by monetary damages." *Reuters Ltd. v. United States Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 199); *see also Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999) (movant must demonstrate injury "that cannot be remedied by an award of monetary damages").

The uniqueness of Plaintiff's injury here is clear. Though his personal property could be tallied up and assigned a monetary value, it is property uniquely resonant with his own personal experiences. Property, particularly personal property, is *sui generis*, and its loss cannot "be adequately compensated for by money damages [because that] ignores the unique nature" of property." *Carada, Ltd. v. McAuliffe*, 1993 U.S. Dist. LEXIS 5057, at *9 (W.D.N.Y. Apr. 5, 1993). Where, as here, property possesses "uniquely valuable characteristics", a moving party has demonstrated irreparable harm sufficient to justify injunctive relief. *See Medgar Edgars Houses Assocs, L.P. v. Carro*, 2001 U.S. Dist. LEXIS 18594, at *16-17 (E.D.N.Y. Nov. 6, 2001)

### III. Equity and Public Policy Favor Plaintiff's Motion

Once Plaintiffs establish the likelihood of success on the merits and demonstrate irreparable harm, preliminary injunctive relief is warranted if the Court, weighing the equities, finds that relief is in the public interest. Although there is "some disagreement among circuits" about whether *any* weight should be given to private hardship, *FTC v. Verity Int'l, Ltd.*, 124 F.Supp.2d 193, 199 n.38 (S.D.N.Y. 2000), in any case public equities must be given far greater weight. *See, e.g., FTC v. Lancaster Colony Corp., Inc.*, 434 F. Supp. 1088, 1096 (S.D.N.Y. 1977) ("The equities to be weighed . . . are not the usual equities of private litigation but public equities.").

The evidence demonstrated that the public equities -- protection of consumers from Defendants' deceptive and irresponsible transportation practices -- weigh heavily in favor of granting the requested injunctive relief. Granting this relief is also necessary because Defendants' conduct, made explicit in their response to Plaintiff's demand letter, indicates they will likely continue to deceive the public with little care for repercussions.

By contrast, the private equities in this case are not compelling. Compliance with the law is hardly an unreasonable burden. Here, because Defendants "can have no vested interest in business activity found to be illegal," the balance of equities tips decidedly toward granting the relief. *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972).

### IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for a temporary restraining order and preliminary injunction, with other relief as set forth in the accompanying proposed order, should be granted.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT - 9 2018 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

CORY HAMMOCK,

Index No. _____

**CV 18-5628**

Plaintiff

**JOHNSON, J.**

-against-

**Affirmation of Service**

MOVING STATE TO STATE, LLC,
And DOES 1-10,

**TISCIONE, M.J.**

Defendants.

I, T. Bryce Jones, an attorney admitted to practice in this Court and in New York State, hereby swear and affirm under penalty of perjury that on or around 11:30AM on October 9, 2018 I delivered by e-mail to the defendant Moving State to State, LLC a copy of the Complaint in this action and notice that we would arrive at the courthouse in the afternoon around 2PM with the Complaint and also apply for a temporary restraining order at that time. On or around 2:00PM on October 9, 2018 I sent the Order to Show Cause and supporting documents to defendant Moving State to State, LLC via the same method.

T. Bryce Jones, Esq.
Jones Law Firm