**UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CORY HAMMOCK, <br><br>                             Plaintiff, <br><br>        v. <br><br> MOVING STATE TO STATE LLC, NATALIE SCHMID, STATE TO STATE MOVING NY INC, STATE TO STATE MOVING GROUP LLC, MICKEY MILLER, JOE MILLER and DOES 2-6 <br><br>                     Defendants(s). | **1:18-CV-05628-SJ-ST** <br><br> **SECOND AMENDED COMPLAINT** |

By and through his attorneys, Jones Law Firm, P.C., Plaintiff Cory Hammock alleges as follows:

## PRELIMINARY STATEMENT

1. Defendants Moving State to State LLC ("STS"), along with parent and sibling companies and the managers and owners of same, including but not limited to Natalie Schmid, Mickey Miller, and Joe Miller[1] ("STS Managers and Owners") (collectively "Defendants"), were engaged by Plaintiff Cory Hammock ("Plaintiff") to package and transport belongings from Virginia to Utah.

2. On September 10, 2018, Defendants packaged Plaintiff's belongings into a truck, then insisted on receiving an additional payment for their services. When Plaintiff refused, Defendants immediately departed without providing Plaintiff with a copy of a bill of lading, receipts, or other documentation referencing labor or service provided.

3. Plaintiff has repeatedly called Defendants to ascertain the location of his belongings, and the identity of those people who made off with them. Defendants have not provided any information and refuses to assist Plaintiff and his counsel in locating his belongings.

---

[1] This Second Amended Complaint adds information regarding the identity of Joe Miller, formerly known as Doe 1. In all other respects it is identical to the Amended Complaint.

4. Subsequent to the filing of this lawsuit, Plaintiff's counsel has had multiple conversations with one or more Defendants, during which they were advised to retain counsel and respond to the Complaint.

5. During the last such conversation on January 3rd, 2019, a man now known or believed to be Joe Miller who identified himself as a co-owner of Defendant STS advised, when informed of the lawsuit, that he was shutting down the company "today" and implied that he would not comply with any court orders.

6. Plaintiff has continued to attempt to work towards an amicable resolution of this matter, but Defendant STS has refused to appear in this action or hire counsel to represent itself.

7. The Clerk entered a Certificate of Default against Defendant STS on November 21, 2018 (Docket Entry 11). A Motion for Default Judgment against Defendant STS is pending (Docket Entries 12 and 13).

## THE PARTIES

8. Plaintiff is informed and believes, and on that basis alleges that Defendant STS is a domestic limited liability company organized under the laws of the State of New York, and doing substantial business in this state.

9. Plaintiff is informed and believes, and on that basis alleges that Defendant Natalie Schmid is a Managing Member of Moving State to State LLC. Plaintiff learned of this Defendant's identity by the returned Proof of Service on October 17, 2018, wherein the process server states that Schmid identified herself as a Managing Member of Moving State to State LLC. A copy of the Proof of Service is attached as **Exhibit A**.

10. Plaintiff is informed and believes, and on that basis alleges that Defendant Joe Miller is a Managing Member of Moving State to State LLC, a co-owner and senior manager of State to State Moving NY Inc., and affiliated with State to State Moving Group LLC. Plaintiff learned of this Defendant's

identity after a series of phone calls his counsel received on January 3, 4, 5, and 7 of 2019, wherein Defendant Joe Miller identified himself as a co-owner of the company.

11. Plaintiff is informed and believes, and on that basis alleges that Defendant State to State Moving NY INC, a domestic business corporation organized under the laws of the State of New York, is an agent of STS. Plaintiff first learned of this Defendant's identity after receiving an email correspondence from this company on January 3, 2019. A copy of this email is attached as **Exhibit B**. Defendant Joe Miller has repeatedly referred in phone conversations with Plaintiff's counsel to his businesses being composed of multiple related companies.

12. Plaintiff is informed and believes, and on that basis alleges that Defendant State to State Moving Group LLC, a domestic limited liability company organized under the laws of the State of New York, is an agent of STS. Plaintiff learned of this Defendant's existence after an entity search in the State of New York. A copy of this entity search is attached as **Exhibit C**. A Google search indicates that the website of this entity is http://state2statemoves.com/. A copy of the company's webpage accessed January 4, 2019 listing Defendant Mickey Miller as the founder of State to State Moving Group LLC is attached as **Exhibit D**.

13. Plaintiff is informed and believes, and on that basis alleges that Defendant Mickey Miller is an owner and manager of State to State Moving Group LLC and one or more of its affiliated corporate. Soon after this lawsuit was filed and served against Defendant STS and prior to issuance of the Certificate of Default against Defendant STS, Plaintiff's counsel was contacted twice by a man identifying himself as "Mickey" and an owner/manager of STS. During this call, Defendant Miller referred to a "sister company" of STS without identifying it by name.

14. On information and belief, the managers/owners of these corporate defendants and the corporate defendants themselves are complicit in the acts giving rise to the Plaintiff's damages and have failed to observe corporate distinctions or formalities.

15. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as Does 2 through 6, inclusive, are unknown to Plaintiff. Plaintiff is informed and believes, and upon that basis alleges, that each of these unknown Defendants is liable in some manner for the obligations, acts, or omissions alleged herein, or for Plaintiff's damages, or both. Plaintiff therefore sues each of these unknown Defendants by his, her, or its fictitious name, and will seek leave of Court to amend this pleading to insert the true names and capacities of these unknown Defendants when they become known.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1337 because this case arises under Act of Commerce, 49 U.S.C. § 14706 (the "Carmack Amendment" to the Interstate Commerce Act) and there is in excess of $10,000 at issue.

17. This Court has general jurisdiction over Defendants because they are New York business entities and managers/founders of business entities, which conduct substantial business in this state.

18. In the alternative, the Court may exercise specific jurisdiction over Defendants because Defendants transacted business with Plaintiff within this state, and the claim arises from that business activity.

19. The United States District Court for the Eastern District of New York is the proper venue for this action because one or more of the corporate defendants have their principal place of business in the County of Queens.

## STATEMENT OF FACTS

20. On August 24, 2018, Plaintiff submitted information concerning his upcoming cross-country move from Alexandria, Virginia to Salt Lake City, Utah.

21. Plaintiff submitted this information to a third-party website, in order to solicit bids from authorized movers to pack, load, and transport his belongings and effects.

22. Later that same day, Plaintiff received a text message and a phone call from Grant Kennedy, a customer service representative employed by Defendants.

23. Mr. Kennedy represented Defendants as a broker and a carrier service capable of conducting a full door-to-door move for Mr. Hammock.

24. Mr. Kennedy promised that Defendants could provide boxes, packing material, and labor, all comprising STS's "platinum package."

25. On August 31, 2018, Plaintiff contracted with Defendants to load, pack, and transport his belongings and effects with a load date of September 9, 2018.

26. A moving team arrived at Plaintiff's domicile on September 9, 2018.

27. On September 10, 2018, at 12:30 a.m., a member of the moving team informed Plaintiff that he needed to pay $1,300-$1,400 in addition to the estimate given in the contract.

28. Plaintiff refused to pay the additional cost.

29. The same member of the moving team continued to insist on receiving the additional payment.

30. Not having received the additional money, the moving team, without notice to Plaintiff, departed with their truck loaded with Plaintiff's belongings and effects.

31. The moving team departed without providing a receipt, a bill of lading, a weight receipt, or any documentation whatsoever referencing the labor or service provided.

32. That same day, Plaintiff made multiple attempts to contact Defendants and Mr. Kennedy directly.

33. Eventually, Plaintiff finally managed to speak to Mr. Kennedy, who informed him that he had been correct to refuse paying additional money to the moving team.

34. Mr. Kennedy then told Plaintiff to wait for a follow-up call.

35. No such call came.

36. Plaintiff continued to call Defendants' customer service line, only to receive canned, unhelpful responses.

37. On September 18, 2018, Plaintiff contacted the Federal Motor Carrier Safety Administration (the "FMCSA") to lodge a complaint against STS.

38. The FMCSA informed Plaintiff that Mr. Kennedy had misrepresented Defendant STS as a carrier, and that in fact, it was registered only as a broker.

39. When Plaintiff engaged Defendant STS, STS's website held itself out as a "Moving Company That You Can Trust." A screenshot of STS's website is attached hereto as **Exhibit E**.

40. Defendant STS's website further advertised that STS has "teams of experienced movers [who] help[] thousands of people complete moves."

41. Plaintiff has still not recovered his belongings, and has no means of discovering where they might be.

42. On September 24, 2018, Plaintiff's counsel Bryce Jones sent to Defendant STS a demand letter, via mail and email, requesting that STS "advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what [STS] intend[s] to charge him for the final delivery price." A copy of Bryce Jones's letter to STS is attached hereto as **Exhibit F**.

43. The next day, Defendant STS responded to the demand letter via e-mail, disclaiming all liability and threatening to hold Plaintiff liable for attorney's fees. A copy of Defendant STS's response to the demand letter is attached hereto as **Exhibit G**.

44. Defendant STS further claimed in its response that Plaintiff was "well aware" of the status of his goods and other information he was seeking. They stated that that he would "continue to be informed about the move with his assigned carrier, and any information regarding his final bill is available to him."

45. Plaintiff's counsel Bryce Jones then replied via e-mail that he thought litigation might be avoided entirely if Defendant STS would just answer six simple questions in writing within 24 hours.

46. Over a week later, Plaintiff still had not received any information regarding his assigned carrier or final bill.

47. At such time, Plaintiff filed suit against Defendant STS.

48. Defendant STS was served via the New York Secretary of State and at its principal place of business. Prior to time lapsing for Defendant STS to file its Answer, Defendant Mickey Miller spoke with Plaintiff's counsel no fewer than two times via phone, during which phone calls he was advised of the suit and to hire counsel.

49. Rather than doing so, Defendant STS repeatedly reached out to Plaintiff directly, threatening him that his irreplaceable personal belongings would be disposed of if he did not pay them additional money.

50. Defendant STS chose not to respond to this lawsuit and the clerk issued a Certificate of Default as to Defendant STS on November 21, 2018 (Docket Entry 11).

51. Plaintiff moved for Default Judgment against STS on December 6, 2018, which motion is pending.

52. Subsequent to the motion, STS contacted Plaintiff and Plaintiff's counsel by e-mail and phone. On the afternoon of January 3, 2019 a woman who identified herself as a dispatcher from STS contacted Plaintiff's counsel, who advised her that a lawsuit had been filed and that he would need to speak with the top manager in order to resolve this issue.

53. Thereafter, a man who identified himself as "Joe" and a co-owner of the company came on the line. When advised of the pending motion for default he implied that he would not comply with any court orders and that he was shutting the company down that day. In subsequent conversations on January 4, 5, and 7 of 2019 and in a message left with Plaintiff's counsel's office this man confirmed his identity as Joe Miller, and confirmed that he is a co-owner of at least two of the defendant companies, Moving State to State, LLC and State to State Moving NY INC.

### FIRST CAUSE OF ACTION
### (Under the Carmack Amendment)

54. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. Defendant STS is engaged in interstate commerce.

56. STS Agents are movers engaged in interstate commerce.

57. In consideration of certain fees, Defendants agreed to transport Plaintiff's belongings and effects in interstate commerce.

58. Defendants have not lived up to their obligations under that agreement.

59. By virtue of Defendants' failure to make delivery, Plaintiff has sustained damages and Defendants are therefore liable to him under the Carmack Amendment.

## SECOND CAUSE OF ACTION
### (For Conversion)

60. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. Defendants have intentionally interfered with Plaintiff's rights in his property.

62. Plaintiff has asserted his rights in his property against Defendants.

63. Defendants have nonetheless refused to provide him access to his belongings and effects.

64. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (For Breach of Contract)

65. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. Defendants have breached the contract by failing to deliver Plaintiff's belongings and effects to the agreed-upon address.

67. Defendants have further breached the contract by refusing to provide Plaintiff with any information whatsoever regarding the shipment of his belongings and effects.

68. While Defendants STS have seemingly expressed willingness to provide information, the behavior displayed by not returning phone calls and written inquiries is willful neglect and should be considered tantamount to a refusal to provide the information.

69. It is imperative that Defendants rectify this breach immediately and inform Plaintiff of the whereabouts of his belongings and effects.

70. Defendants' breach goes to the heart of the contract and, accordingly, Plaintiff is entitled to rescind it and recover from Defendants the purchase price paid, plus prejudgment interest and Plaintiff's damages directly and proximately caused by Defendants.

71. In the alternative, Defendants should be compelled to perform on the Contract, and Plaintiff be entitled to collect damages directly and proximately caused by Defendants incurred in compelling their performance including, but not limited to, the filing of this action.

72. Furthermore, Plaintiff should be compensated for having to live and sleep without his household belongings for a prolonged period of time.

## FOURTH CAUSE OF ACTION
### (For Negligent Misrepresentation)

73. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

74. Alternatively, Plaintiff is informed and believes, and upon that basis alleges, that the foregoing representations made by STS regarding its carrier status were untrue and that STS made those representations without reasonable grounds for believing the representations to be true.

75. Plaintiff reasonably relied on the representations and, *inter alia*, has paid $3,827.69 to Defendants under the belief that they were a carrier.

76. As a direct and proximate result of the foregoing, Plaintiff has incurred damages in the amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349 et seq. New York General Business Law Section 350)

77. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78. Defendants have engaged in deceptive acts and practices in the conduct of their business.

79. By misrepresenting the nature of their business, Defendants have willfully and knowingly violated New York consumer protection laws.

80. Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

81. New York General Business Law Section 350-a defines "false advertising" ad "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

82. Defendants have held themselves out as a mover to the public.

83. They have privately asserted to Plaintiff that they are not, in fact, a mover or carrier but a broker.

84. As a direct and proximate result of Defendants' violation of New York General Business Law Section 350, Plaintiff has suffered an ascertainable loss and therefore seeks actual and punitive damages.

**SIXTH CAUSE OF ACTION**
**Fraudulent Conveyance**
**(As Against All Defendants Except STS)**

85. Defendants have conspired to defraud Plaintiff, a likely judgment creditor, by shifting assets and threatening to close one or more businesses out of spite.

86. Such actions satisfy the criteria for maliciousness. Any such transactions should be voided and punitive damages awarded.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. On the First and Second Causes of Action under the Carmack Amendment and for conversion, against all Defendants, with Defendants ordered to (a) identify the location of and deliver Plaintiff's belongings and effects to an agent designated by Plaintiff; and (b) awarding compensatory, punitive, and exemplary damages in an amount according to proof; 2. On the

Third Cause of Action for breach of contract, against all Defendants, with Defendants ordered to (a) locate and deliver Plaintiff's belongings and effects to the agreed-upon location, or, in the alternative, to pay Plaintiff a monetary amount sufficient to compensate him for the loss of his belongings and effects; and (b) awarding punitive and exemplary damages in an amount according to proof.

2. On the Fourth Cause of Action for negligent misrepresentation, compensatory damages in an amount according to proof;

3. On the Fifth Cause of Action for violation of New York statutory law, trebled compensatory damages and reasonable attorneys' fees;

4. On the Sixth Cause of Action for fraudulent conveyance, voiding of any such conveyances and punitive damages in an amount according to proof when further facts regarding any such conveyances become known;

5. For pre-judgment and post-judgment interest on all sums awarded;

6. For costs; and

7. For such other further relief as the Court deems just and proper.

Plaintiff respectfully demands a jury trial on all issues so-triable by right.

Dated: January 8, 2019

Respectfully submitted,

/s/ T. Bryce Jones
T. Bryce Jones, Esq.
Jones Law Firm, P.C.
450 7th Avenue, Suite 1408
New York, NY 10123
(212) 258-0685
bryce@joneslawnyc.com
*Attorneys for Plaintiff*