UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

CORY HAMMOCK,

                       Plaintiff,

    v.

MOVING STATE TO STATE LLC, STATE TO STATE MOVING NY INC, STATE TO STATE MOVING GROUP LLC, DIRECT VAN LINES SERVICES INC., AROUND THE CLOCK MOVING SERVICES INC., YARIN NADEL a.k.a. JOE MILLER a.k.a. JOE NADEL, MICHAEL NADEL a.k.a. MICKEY MILLER,

                       Defendants(s).

1:18-CV-05628-SJ-ST

**THIRD AMENDED COMPLAINT**

---

By and through his attorneys, Jones Law Firm, P.C., Plaintiff Cory Hammock alleges as follows:

## PRELIMINARY STATEMENT

1.     Defendants MOVING STATE TO STATE LLC ("STS"), along with parent and sibling companies, STATE TO STATE MOVING NY INC, STATE TO STATE MOVING GROUP LLC, DIRECT VAN LINES SERVICES INC., AROUND THE CLOCK MOVING SERVICES INC. (collectively, "Corporate Defendants"), and the managers and owners of same, Defendant YARIN NADEL, also known as "Joe Miller" or "Joe Nadel", and MICHAEL NADEL, also known as "Mickey Miller"[1] (collectively referred to with Yarin as "Nadel Defendants") (altogether collectively "Defendants"), were engaged by Plaintiff Cory Hammock ("Plaintiff") to package and transport belongings from Virginia to Utah.

---

[1] This Third Amended Complaint identifies the identity of previously-captioned defendants Mickey Miller and Joe Miller, and updates other allegations and subsequent proceedings in this matter.

1

2. On September 10, 2018, Defendants packaged Plaintiff's belongings into a truck, then insisted on receiving an additional payment for their services. When Plaintiff refused, Defendants immediately departed without providing Plaintiff with a copy of a bill of lading, receipts, or other documentation referencing labor or service provided.

3. Since then, the Defendants have rebuffed dozens of communications and efforts on the part of Plaintiff to retrieve his belongings.  Since this Action was first filed on October 9, 2018, Defendants have refused to appear or hire counsel to represent itself in this action.

4. During the pendency of this Action, the Defendants have faced a federal enforcement action alleging wire fraud, in which the Defendants have consented to return Plaintiff's belongings.  They eventually did so, but have not yet made Plaintiff whole for damages incurred by being deprived of all of his belongings for approximately one year, as well as certain damages to those same belongings, and Plaintiff's attorneys' fees and costs in bringing this action, to which Plaintiff is entitled under law.  Plaintiff is also entitled to pierce the corporate veil to enforce this Action against Yarin Nadel, Michael Nadel, and each of the Corporate Defendants as alter egos of the Nadel Defendants.

## THE PARTIES

5. Defendant Moving State to State LLC ("Defendant STS") is a domestic limited liability company organized under the laws of the State of New York, and doing substantial business in this state.

6. Plaintiff is informed and believes, and on that basis alleges that Defendant Yarin Nadel is a co-owner and managing members of Defendant STS and the other Corporate Defendants (along with his father, Defendant Michael Nadel), and that Defendant Yarin Nadel has used the aliases "Joe Miller" and "Joe Nadel" in his role as manager of Defendant STS.

7. Plaintiff is informed and believes, and on that basis alleges that Defendant Michael Nadel is a co-owner and managing members of Defendant STS and the other Corporate Defendants (along with his son, Defendant Yarin Nadel), and that Defendant Michael Nadel has used the alias "Mickey Miller" in a similar management role with Defendant STS.

8. Defendant State to State Moving NY INC is a domestic business corporation organized under the laws of the State of New York. Plaintiff is informed and believes, and on that basis alleges that Defendant State to State Moving NY INC is an agent and/or alter ego of Defendant STS and/or the Nadel Defendants.

9. Defendant State to State Moving Group LLC is a domestic business corporation organized under the laws of the State of New York. Plaintiff is informed and believes, and on that basis alleges that Defendant State to State Moving Group LLC is an agent and/or alter ego of Defendant STS and/or the Nadel Defendants.

10. Defendant State to Direct Van Lines Services Inc. is a domestic business corporation organized under the laws of the State of New York. Plaintiff is informed and believes, and on that basis alleges that Defendant Direct Van Lines Services Inc. an agent and/or alter ego of Defendant STS and/or the Nadel Defendants.

11. Defendant Around the Clock Moving Services Inc. is a domestic business corporation organized under the laws of the State of New York. Plaintiff is informed and believes, and on that basis alleges that Defendant Around the Clock Moving Services Inc. is an agent and/or alter ego of Defendant STS and/or the Nadel Defendants.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1337 because this case arises under Act of Commerce, 49 U.S.C. § 14706 (the "Carmack Amendment" to the Interstate Commerce Act) and there is in excess of $10,000 at issue.

13. This Court has general jurisdiction over Defendants because they are New York business entities and managers/founders of business entities, which conduct substantial business in this state.

14. In the alternative, the Court may exercise specific jurisdiction over Defendants because Defendants transacted business with Plaintiff within this state, and the claim arises from that business activity.

15. The United States District Court for the Eastern District of New York is the proper venue for this action because one or more of the corporate defendants have their principal place of business in the County of Queens.

## STATEMENT OF FACTS

16. On August 24, 2018, Plaintiff sought an interstate moving company for his upcoming cross-country move from Alexandria, Virginia to Salt Lake City, Utah.

17. Plaintiff submitted information about himself and his moving requirements to a third-party website, in order to solicit bids from authorized movers to pack, load, and transport his belongings and effects.

18. Later that same day, Plaintiff received a text message and a phone call from someone who identified themselves as Grant Kennedy, a customer service representative employed by Defendant STS.

19. Mr. Kennedy represented Defendants as a broker and a carrier service capable of conducting a full door-to-door move for Mr. Hammock.

20.     Mr. Kennedy promised that Defendants could provide boxes, packing material, and labor, all comprising Defendant STS's "platinum package."

21.     On August 31, 2018, Plaintiff contracted with Defendant STS to load, pack, and transport his belongings and effects with a load date of September 9, 2018.

*Defendant STS Engages in 'Hostage Moving' Scheme Against Plaintiff and Misrepresents Itself as a Licensed Interstate Carrier*

22.     A moving team arrived at Plaintiff's domicile on September 9, 2018.

23.     On September 10, 2018, at 12:30 a.m., a member of the moving team informed Plaintiff that he needed to pay $1,300-$1,400 in addition to the estimate given in the contract.

24.     Plaintiff refused to pay the additional cost.

25.     The same member of the moving team continued to insist on receiving the additional payment.

26.     Not having received the additional money, the moving team, without notice to Plaintiff, departed with their truck loaded with Plaintiff's belongings and effects.

27.     The moving team departed without providing a receipt, a bill of lading, a weight receipt, or any documentation whatsoever referencing the labor or service provided.

28.     That same day, Plaintiff made multiple attempts to contact Defendants and Mr. Kennedy directly.

29.     Eventually, Plaintiff finally managed to speak to Mr. Kennedy, who informed him that he had been correct to refuse paying additional money to the moving team.

30.     Mr. Kennedy then told Plaintiff to wait for a follow-up call.

31.     No such call came.

32.     Plaintiff continued to call Defendants' customer service line, only to receive canned, unhelpful responses.

33. For the following 12 months, approximately, the Defendants continued to hold Plaintiff's belongings "hostage", or as leverage to get him to pay more than he had agreed to pay.

34. The Plaintiff was deprived of nearly all his worldly belongings for nearly a year, with no idea as to whether he could expect to ever get them back.

*Plaintiff's Non-Judicial Efforts to Recover His Belongings*

35. On September 18, 2018, Plaintiff contacted the Federal Motor Carrier Safety Administration (the "FMCSA") to lodge a complaint against STS.

36. The FMCSA informed Plaintiff that Mr. Kennedy had misrepresented Defendant STS as a carrier, and that in fact, it was registered only as a broker.

37. When Plaintiff engaged Defendant STS, STS's website held itself out as a "Moving Company That You Can Trust."

38. Defendant STS's website further advertised that STS has "teams of experienced movers [who] help[] thousands of people complete moves."

39. On September 24, 2018, Plaintiff's counsel Bryce Jones sent to Defendant STS a demand letter, via mail and email, requesting that STS "advise us of the status of our client's property immediately, whether and when it will be delivered to him, and what [STS] intend[s] to charge him for the final delivery price."

40. The next day, Defendant STS responded to the demand letter via e-mail, disclaiming all liability and threatening to hold Plaintiff liable for attorney's fees.

41. Defendant STS further claimed in its response that Plaintiff was "well aware" of the status of Plaintiff's goods and other information he was seeking. They stated that that he would "continue to be informed about the move with his assigned carrier, and any information regarding his final bill is available to him."

42. Plaintiff's counsel Bryce Jones then replied via e-mail that he thought litigation might be avoided entirely if Defendant STS would just answer six simple questions in writing within 24 hours.

43. Over a week later, Plaintiff still had not received any information regarding his assigned carrier or final bill.

*Plaintiff Files Suit*

44. At such time, Plaintiff filed the instant action against Defendant STS.

45. Defendant STS was served via the New York Secretary of State and at its principal place of business. Prior to time lapsing for Defendant STS to file its Answer, representatives for Defendant STS spoke with Plaintiff's counsel no fewer than two times via phone, during which phone calls they were informed of the suit and advised to hire counsel.

46. Rather than doing so, Defendant STS repeatedly reached out to Plaintiff directly, threatening him that his irreplaceable personal belongings would be disposed of if he did not pay them additional money.

47. Defendant STS chose not to respond to this lawsuit and the clerk issued a Certificate of Default as to Defendant STS on November 21, 2018 (ECF No. 11).

48. Thereafter, on or around January 3, 2019, Plaintiff's counsel spoke to a man who identified himself as "Joe" and a co-owner of Defendant STS. When advised of the pending motion for default he implied that he would not comply with any court orders and that he was shutting the company down that day. In subsequent conversations on January 4, 5, and 7 of 2019 and in a message left with Plaintiff's counsel's office this man confirmed his identity as "Joe Miller," and confirmed that he is a co-owner of at least two of the defendant companies, Moving State to State, LLC and State to State Moving NY INC.

49. In the six months that followed, Plaintiff struggled to determine: (1) the location and status of Plaintiff's belongings, and (2) the true beneficial owners of Defendant STS. Plaintiff undertook significant investigation to uncover such information, with mixed success.

50. As further detailed herein, Plaintiff ultimately did recover his belongings, but only after a civil enforcement action brought by the federal government compelled the Defendants to return Plaintiff's belongings, and publicly identified the Defendant Yarin Nadel and Defendant Michael Nadel as the owners and operators of the Corporate Defendants.

*The Department of Justice Initiates a Civil Action Against Yarin Nadel and Michael Nadel*

51. On March 19, 2019, the Department of Justice initiated a civil action against Defendant Yarin Nadel, Defendant Michael Nadel and the various Corporate Defendants to this action, alleging "ongoing commission of criminal wire fraud" and requested injunctive relief. *See United States v. Nadel et al.,* Case 1:19-cv-01578-MKB-CLP (E.D.N.Y.). A copy of the Government's complaint is attached hereto as **Exhibit A**.

52. The Government's investigation and resultant action was based in part upon the Plaintiff's complaints, and those of dozens of other customers who had been similarly victimized by the Defendants unlawful business practices.

53. In the *U.S. v. Nadel* complaint, the instant action is referenced at Paragraphs 18-19, and the Plaintiff in this action is identified as "Customer-1".

54. Ultimately, the Defendants entered into a series of Consent Orders with the Government, agreeing to return the property of various customers. See *U.S. v. Nadel*, ECF Nos. 22-23.

55. Subsequently Plaintiff's counsel reached out to Defendants' counsel of record in *U.S. v. Nadel* and negotiated for the return of Plaintiff's property, via a similar Consent Order.

See *U.S. v. Nadel*, ECF No. 30 (Brodie, J., so-ordering the consent to return the Plaintiff's property on July 24, 2019).

56. On or around August 20, 2019, the Plaintiff's property was returned to him, with some damage and missing items.

57. Then, after the Nadel Defendants failed to comply with other obligations in *U.S. v. Nadel,* a grand jury indictment was filed in this Court on October 25, 2019, charging the Nadel Defendants with conspiracy to defraud, conspiracy to commit wire fraud and four counts of making false statements. *See United States v. Nadel et al.,* Case 1:19-cr-00493-ENV (E.D.N.Y.). A copy of the now-unsealed indictment is attached hereto as **Exhibit B**.

**FIRST CAUSE OF ACTION**
**(Under the Carmack Amendment)**
**(As Against All Defendants)**

58. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. Defendants are engaged in interstate commerce.

60. Defendants are movers engaged in interstate commerce.

61. In consideration of certain fees, Defendants agreed to transport Plaintiff's belongings and effects in interstate commerce.

62. Defendants have not lived up to their obligations under that agreement.

63. By virtue of Defendants' failure to make delivery, Plaintiff has sustained damages and Defendants are therefore liable to him under the Carmack Amendment.

**SECOND CAUSE OF ACTION**
**(For Conversion)**
**(As Against All Defendants)**

64. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

65. Defendants have intentionally interfered with Plaintiff's rights in his property.

66. Plaintiff has asserted his rights in his property against Defendants.

67. Defendants nonetheless refused to provide him access to his belongings and effects.

68. Plaintiff is therefore entitled to recover damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (For Breach of Contract)
### (As Against All Defendants)

69. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. Defendants have breached the contract by failing to deliver Plaintiff's belongings and effects to the agreed-upon address.

71. Defendants have further breached the contract by refusing to provide Plaintiff with any information whatsoever regarding the shipment of his belongings and effects.

72. While Defendants have seemingly expressed willingness to provide information, the behavior displayed by not returning phone calls and written inquiries is willful neglect and should be considered tantamount to a refusal to provide the information.

73. It is imperative that Defendants rectify this breach immediately and inform Plaintiff of the whereabouts of his belongings and effects.

74. Defendants' breach goes to the heart of the contract and, accordingly, Plaintiff is entitled to rescind it and recover from Defendants the purchase price paid, plus prejudgment interest and Plaintiff's damages directly and proximately caused by Defendants.

75. In the alternative, Defendants should be compelled to perform on the Contract, and Plaintiff be entitled to collect damages directly and proximately caused by Defendants incurred in compelling their performance including, but not limited to, the filing of this action.

76. Furthermore, Plaintiff should be compensated for having to live and sleep without his household belongings for a prolonged period of time.

## FOURTH CAUSE OF ACTION
### (For Negligent Misrepresentation)
### (As Against All Defendants)

77. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

78. Alternatively, Plaintiff is informed and believes, and upon that basis alleges, that the foregoing representations made by Defendants regarding its carrier status were untrue and that Defendants made those representations without reasonable grounds for believing the representations to be true.

79. Plaintiff reasonably relied on the representations and, *inter alia*, has paid $3,827.69 to Defendants under the belief that they were a carrier.

80. As a direct and proximate result of the foregoing, Plaintiff has incurred damages in the amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Violation of New York's Consumer Protection from Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349 et seq.
### New York General Business Law Section 350)
### (As Against All Defendants)

81. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

82. Defendants have engaged in deceptive acts and practices in the conduct of their business.

83. By misrepresenting the nature of their business, Defendants have willfully and knowingly violated New York consumer protection laws.

84. Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service."

85. New York General Business Law Section 350-a defines "false advertising" ad "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

86. Defendants have held themselves out as a mover to the public.

87. They have privately asserted to Plaintiff that they are not, in fact, a mover or carrier but a broker.

88. As a direct and proximate result of Defendants' violation of New York General Business Law Section 350, Plaintiff has suffered an ascertainable loss and therefore seeks actual and punitive damages.

### SIXTH CAUSE OF ACTION
### Fraudulent Conveyance
### (As Against All Defendants)

89. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

90. Defendants have conspired to defraud Plaintiff, a likely judgment creditor, by shifting assets and threatening to close one or more businesses out of spite.

91. Such actions satisfy the criteria for maliciousness. Any such transactions should be voided and punitive damages awarded.

## SEVENTH CAUSE OF ACTION
### Alter Ego
### (As Against All Defendants)

92. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs as though fully set forth herein.

93. At all relevant times, Nadel Defendants were the alter egos of Defendant STS and the Other Corporate Defendants, and therefore should be held jointly and severally liable for any relief or damages awarded to the Plaintiff.

94. As the sole owners and officers of Defendant STS at all relevant times, the Nadel Defendants exercised complete domination and control over Defendant STS and the other Corporate Defendant.

95. Using their domination and control of Defendant STS, the Nadel Defendants abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against the Plaintiff such that equity warrants piercing Corporate Defendants' corporate veil to hold Defendants personally liable for the Judgment.

96. For example, the recent federal indictment against the Nadel Defendants found probable cause that, in pertinent part "As a part of the scheme, the [Nadel] defendants, together with others, registered corporate entities, including but not limited to the State to State Companies, often using fictitious names and business addresses, which the defendants, together with others, owned, operated and controlled, and used for their interstate moving business."

97. On information and belief, the Corporate Defendants ignored the corporate formalities that are part and parcel of the corporate existence.

98. On information and belief, the Nadel Defendants treated the Defendant STS's and the other Corporate Defendants' assets, if any, and its debts as interchangeable with their own.

13

99. On information and belief, with no income and minimal assets, and no source of income or capital other than de minimus capital contributions, Defendant STS and the other Corporate Defendants were intentionally and severely undercapitalized when Defendant STS undertook its contractual obligations with the Plaintiff.

100. By abusing the privilege of doing business in the corporate form, the Nadel Defendants have damaged Plaintiff and should therefore be held liable for the Judgment rendered against Defendant STS and other Corporate Defendants.

101. Similarly and/or conversely, the other Corporate Defendants are the alter egos of Defendant STS, and by extension the Nadel Defendants, through similar means as detailed above.

102. Upon information and belief, these entities were closer than arms-length commercial subsidiaries, and there was a complete overlap in ownership and control between the various Corporate Defendants.

103. Defendant STS and the other Corporate Defendants were used to commit a fraud or wrong that cause Plaintiff to unjustly suffer a loss.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. On their first cause of action, against Defendants in an amount to be determined at trial, plus attorneys' fees and costs; and

2. On their second cause of action, against Defendants in an amount to be determined at trial, plus attorneys' fees and costs; and

3. On their third cause of action, against Defendants in an amount to be determined at trial, plus attorneys' fees and costs; and

4. On their fourth cause of action, against Defendants in an amount to be determined at trial, plus attorneys' fees and costs; and

5. On their fifth cause of action, against Defendants in an amount to be determined at trial, plus attorneys' fees and costs; and

6. On their sixth cause of action, against Defendants in an amount to be determined at trial, plus attorneys' fees and costs; and

7. Such other and further relief the Court deems just and proper.

Plaintiff respectfully demands a jury trial on all issues so-triable by right.

Dated: January 16, 2019

                          Respectfully submitted,

                          /s/ T. Bryce Jones
                          T. Bryce Jones, Esq.
                          Jones Law Firm, P.C.
                          42 W. 38th Street, Suite 1002
                          New York, NY 10018
                          (212) 258-0685
                          bryce@joneslawnyc.com
                          *Attorneys for Plaintiff*