**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X

CORY HAMMOCK,

                          Plaintiff,

  -against-

MOVING STATE TO STATE LLC, STATE TO STATE MOVING NY INC, STATE TO STATE MOVING GROUP LLC, DIRECT VAN LINES SERVICES INC., AROUND THE CLOCK MOVING SERVICES INCE., YARIN NADEL a.k.a. JOE MILLER a.k.a. JOE NADEL, MICHAEL NADEL a.k.a. MICKEY MILLER,

                          Defendant.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

18-CV-5628 (RPK) (ST)

**TISCIONE, United States Magistrate Judge:**

      Plaintiff Cory Hammock brought this action against Defendants Moving State to State, LLC, State to State Moving NY, Inc., State to State Moving Group, LLC, Direct Van Lines Services, Inc., Around the Clock Moving Services, Inc., (collectively "Corporate Defendants"), Yarin Nadel, and Michael Nadel (collectively "Individual Defendants") for alleged violations of 49 U.S.C. § 14706 (the "Carmack Amendment" to the Interstate Commerce Act), and related state statutory and common law claims. *See* 3d Am. Compl., ECF No. 39.  The Clerk of Court entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure against the Individual Defendants on July 31, 2020. *See* Clerk's Entry of Default, ECF No. 53.  On December 2, 2020, Plaintiff filed a Motion for Default Judgment against the Individual Defendants. *See* Pl's Mot. for Default J., ECF No. 56.  The Honorable Rachel P. Kovner referred the Motion to me for a Report and Recommendation. *See* Order, 18-CV-5628 (E.D.N.Y. Dec. 3, 2020).  For the reasons stated below, I respectfully recommend that the Motion for Default Judgment be DENIED without prejudice to renew.

1

# BACKGROUND

I.     Factual Background

The following facts are undisputed and taken as true for purposes of deciding this motion. *See* Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

On August 31, 2018, Plaintiff contracted with Defendant Moving State to State, LLC ("MSTS") to load, pack, and transport his belongings and effects from his home in Alexandria, Virginia to Salt Lake City, Utah. *See* 3d. Am. Compl. ¶ 16,21, ECF No. 39. MSTS is a domestic limited liability company organized under the laws of New York, over which the Individual Defendants exercised complete control as the sole owners, treating any assets and debts as interchangeable with their own. *See id.* ¶ 5-7, 94, 98. On September 10, 2018, after Plaintiff's belongings were loaded onto their truck, a member of the moving team informed Plaintiff that he needed to pay an additional $1,300 to $1,400 over the agreed upon estimate. *Id.* ¶ 23. When Plaintiff refused to pay the additional cost, the moving team, without notice to Plaintiff, departed with his property. *Id.* ¶ 24-26. No one provided Plaintiff with a bill of lading or any other documentation. *Id.* ¶ 27. Plaintiff immediately attempted to contact MSTS but was unsuccessful in retrieving his property. *See id.* ¶ 28-34. Plaintiff then contacted the Federal Motor Carrier Safety Administration ("FMCSA") to lodge a complaint against MSTS. *Id.* 35.

On September 24, 2018, Plaintiff's counsel contacted MSTS via email with a demand letter regarding the status and state of Plaintiff's property. *Id.* ¶ 39. MSTS responded the next day disclaiming all liability and stating that they were "well aware of the status of Plaintiff's goods and other information he was seeking…that he would continue to be informed about the move with his assigned carrier, and any information regarding his final bill is available to him." *Id.* ¶ 40-41 (internal quotation marks omitted). Plaintiff's counsel replied by outlining how

"litigation might be avoided," but did not receive a response. *Id.* ¶ 42-43.

II.     Procedural Background

On October 9, 2018, Plaintiff filed this suit alleging violations of the Carmack Amendment, 49 U.S.C. § 14706, and related state and common law claims. *See id.* Since that time, no defendant has ever appeared in connection with this case.

On March 19, 2019, the U.S. Department of Justice initiated a civil action against, *inter alia*, the Individual Defendants. 3d Am. Compl. ¶ 51. Plaintiff's counsel reached out to the defense counsel on that case, and on August 20, 2019, Plaintiff's property was finally returned to him, albeit "with some damage and missing items." *See id.* ¶ 55-56. Thereafter, on October 25, 2019, a criminal indictment was unsealed, charging the Individual Defendants with conspiracy to defraud, conspiracy to commit wire fraud, and four counts of making false statements. *Id.* ¶ 57.

Plaintiff filed the Third Amended Complaint on January 16, 2020. *See* 3d Am. Compl., ECF No. 39. On April 24, 2020, Plaintiff filed a letter with the Court requesting alternative service via the Individual Defendants' criminal counsel, with whom Plaintiff's counsel had been corresponding. *See* Pl.'s Letter Regarding Serv. 3d Am. Compl., ECF No. 41. The Court granted Plaintiff's request and ordered that service may be effectuated by sending a copy of the Third Amended Complaint to the Individual Defendants' criminal counsel both by regular mail to his office and by email to his official email account used to receive ECF notifications from the Court.[1] *See* Order, 18-CV-5628 (E.D.N.Y. May 11, 2020). Accordingly, the Plaintiff filed proof

---

[1] Federal Rule of Civil Procedure 4(e) provides that service upon an individual located in the United States may be effected pursuant to the law of the forum state or the state in which service is effected. "In New York State, service may be effected in such manner as the court, upon motion without notice directs, if service is impracticable under paragraphs one [personal service], two [leave and mail service] and four [nail and mail service] of this section." *S.E.C. v. HGI, Inc.*, No. 99 CIV. 3866 (DLC), 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999) (citing New York State Civil Practice Law and Rules § 308(5)). "In shaping an appropriate method for alternate

of service on June 12, 2020. *See* Pl. Aff. of Serv., ECF No. 46

On July 24, 2020 Plaintiff requested that a Certificate of Default be issues against the Individual Defendants. *See* Pl.'s Req. for Certificate of Default, ECF No. 51.  The Clerk of Court entered default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure against the Individual Defendants on July 31, 2020. *See* Clerk's Entry of Default, ECF No. 53.  On December 2, 2020, Plaintiff filed this Motion for Default Judgment. *See* Pl's Mot. for Default J., ECF No. 56.  The next day, Judge Kovner referred the Motion to me for a Report and Recommendation. *See* Order, 18-CV-5628 (E.D.N.Y. Dec. 3, 2020).

## DISCUSSION

III.  <u>Standard of Review</u>

A defending party who fails to adequately respond to a complaint risks default.  The procedure for entering a default and subsequent default judgment is outlined in Federal Rule of Civil Procedure 55.  Courts are directed to engage in a two-step process for the entry of a

---

service, the Court must ensure that the alternate method complies with constitutional due process by being reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 366 (E.D.N.Y. 2016) (collecting cases) (internal quotation marks omitted).  "Section 308(5) requires a showing of impracticability of other means of service, but does not require proof of due diligence or of actual prior attempts to serve a party under the other provisions of the statute." *See HGI, Inc.,* 1999 WL 1021087, at *1 (collecting cases).  "The meaning of "impracticability" depends upon the facts and circumstances of the particular case." *Id.* (citing *Markoff v. South Nassau Community Hospital,* 458 N.Y.S.2d 672, 673 (2d Dep't 1983); *Hitchcock v. Pyramid Centers of Empire State Co.,* 542 N.Y.S.2d 813, 814 (3d Dep't 1989)).  Here, the Individual Defendants have attempted to avoid service by using aliases and fake names and flouted the orders of the District Court to appear, thus making service impracticable.  *See* Pl.'s Letter Regarding Serv. 3d Am. Compl., ECF No. 41.  Plaintiff's counsel states that he was contacted by the Individual Defendant's criminal counsel and discussed settlement. *See id.* Accordingly, the Court-fashioned means of alternative service was the best reasonably calculated method, under the circumstances, to apprise the Individual Defendants of the pendency of the action and afford them an opportunity to present their objections. U.S. Const. Amend. 14; N.Y. CPLR § 308; *see Ferrarese*, 164 F. Supp. 3d 361.

4

judgment against a party who fails to defend. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). First, the moving party must obtain a certificate of default from the Clerk of Court. *See* Fed. R. of Civ. P. 55(a). Second, once the certificate is issued, the moving party may apply for entry of a judgment of default. Fed. R. of Civ. P. 55(b). In this second step, a court considers as true all factual allegations in the complaint relating to liability. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012). However, the court must still determine whether the factual allegations, taken as true, establish the defendant's liability as a matter of law. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (following entry of default, the court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law").

"[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Courts consider three factors when determining whether to grant a default judgment: (i) whether the defendant's default was willful; (ii) whether the defendant has a meritorious defense; and (iii) the level of prejudice to the non-defaulting party if the motion is denied. *See Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 96 (E.D.N.Y. 2015) (citations omitted). "The decision whether to grant a default judgment rests with the sound discretion of the district court." *Id.* (citing *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir.1999); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, 10–CV–5270, 2014 WL 1220630, at *2, (E.D.N.Y. Mar. 24, 2014)).

By entry of default, the defaulting party neither concedes liability nor the moving party's

5

entitlement and calculation of damages. *See Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234. Therefore, after finding liability, a court must conduct an inquiry to "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citation omitted); *see United States v. Myers*, 236 F. Supp. 3d 702, 709 (E.D.N.Y. 2017) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (quoting *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)).

  IV. <u>Piercing the Corporate Veil</u>

  Plaintiff argues that the Individual Defendants should be jointly and severally liable with the Corporate Defendants under a theory of alter ego liability. *See* 3d Am. Compl. ¶ 92-103. Joint and several liability is permitted under the Carmack Amendmenet. *See Project Hope v. M/V IBN SINA*, 250 F.3d 67 (2d Cir. 2001) "Alter ego liability exists when a parent or owner uses the corporate form to achieve fraud, or when the corporation has been so dominated by an individual or another corporation (usually a parent corporation), and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own." *OOO v. Empire United Lines Co.*, 557 F. App'x 40, 45–46 (2d Cir. 2014), as corrected (Feb. 7, 2014) (internal quotation marks omitted) (citing *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 195 (2d Cir.2010) aff'd, 569 U.S. 108 (2013) (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir.1979) (applying New York law))). Piercing the corporate veil with respect to a claim against a limited liability company is permitted under New York law. *See Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430 (E.D.N.Y. 2017).

  "To pierce the corporate veil, a party must establish that (a) the owners exercised

complete domination of the corporation with respect to the transaction at issue; and (b) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Id.* at 441 (citing *Thrift Drug, Inc. v. Universal Prescription Adm'rs*, 131 F.3d 95, 97 (2d Cir. 1997)). "In deciding whether to pierce the corporate veil, courts look to a variety of factors, including the intermingling of corporate and [shareholder] funds, undercapitalization of the corporation, failure to observe corporate formalities such as the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors." *OOO*, 557 F. App'x at 46. (internal quotation marks and citations omitted). "The decision whether to pierce the corporate veil in a given instance depends on the particular facts and circumstances." *Id.* (quoting *Weinstein v. Willow Lake Corp.*, 262 A.D.2d 634 (N.Y. App. Div. 2d Dept. 1999)).

      Taking all of Plaintiff's allegations as true, piercing the corporate veil is appropriate. The Individual Defendants were the sole owners and officers of the Corporate Defendants, exercising complete dominion and control over them. 3d Am. Compl. ¶ 94. The Individual Defendants also treated the Corporate Defendants assets, if any, as interchangeable with their own. *Id.* ¶ 98. In fact, when Plaintiff contracted with MSTS, it was intentionally and severely undercapitalized, with no income and minimal assets. *Id.* ¶ 99. Finally, as quoted from the criminal indictment against them, the Individual Defendants, "[a]s part of the scheme … registered corporate entities, including but not limited to State to State Companies, often using fictitious names and business addresses…." *Id.* ¶ 96. Accordingly, this Court respectfully recommends that the District Court pierce the corporate veil and hold the Individual Defendants jointly and severally liable with the Corporate Defendants.

7

V.  Liability

Plaintiff alleges liability for alleged violations of the Carmack Amendment, 49 U.S.C. § 14706, and related claims of conversion, breach of contract, negligent misrepresentation, New York's Consumer Protection from Deceptive Acts and Practices Act ("NYDPA"), N.Y. Gen. Bus. Law § 349 et seq., and fraudulent conveyance. See 3d Am. Compl., ECF No. 39.

The Carmack Amendment governs the liability of carriers for the interstate shipment of goods. See 49 U.S.C. § 14706.  In relevant part, it requires that any motor carrier who transports property interstate must issue a receipt or bill of lading for the property it receives for transport and will become liable to the person entitled to recover under the receipt or bill of lading for the actual loss or injury to that property. See 49 U.S.C. § 14706(a)(1).  Notably, "[f]ailure to issue a receipt or bill of lading does not affect the liability of a carrier." Id.

a.  Preemption of State and Common Law Claims

The Carmack Amendment preempts all state and common law claims related to the loss or damage of property during interstate shipment. *Rechler v. United Van Lines LLC*, No. 18-cv-03960-ADS-GRB, 2018 WL 6173440, at *3 (E.D.N.Y. Nov. 26, 2018); *Aviva Trucking Special Lines v. Ashe*, 400 F. Supp. 3d 76, 79 (S.D.N.Y. 2019) ("The Carmack Amendment preempts all state law on the issue of interstate carrier liability") (citing *Adams Express Co. v. Croninger*, 226 U.S. 491 (1913) ("Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it").  While Plaintiff does not explicitly address this issue, he argues that preemption should not apply within the context of punitive damages. See Pl.'s Mem. of L. in Supp. of Mot. for Default J. ("Mem. of Law") at 8-10, ECF No. 56-7.

Plaintiff contends that his "state law claims are not merely common law repackaging of

8

their Carmack Amendment claims." *Id.* at 8.  First, Plaintiff argues that his "conversion claim seeks to hold Defendant responsible for deliberately refusing to return [his] property upon demand", which also implicates his claim of breach of contract. *See id.* at 8-9.  Second, Plaintiff avers that the "negligent misrepresentation and [NYDPA] claims seek to hold Defendant responsible for misrepresenting prices and its status as a carrier." *Id.*  Finally, although not covered in his Mem. of Law, Plaintiff alleges fraudulent conveyance. *See* 3d Am. Compl. ¶ 89-90.

Plaintiff's cited legal support does not strengthen his position.  Plaintiff cites *Beck v. Moishe's Moving & Storage, Inc.*, 167 Misc. 2d 960 (N.Y. Sup. Ct., 1995) as an example of a New York state court that has "awarded punitive damages in nearly identical fact patters without finding any broad preemption of such award from the Carmack Amendment." Mem. of Law at 9.  This case is completely inapplicable here.  The plaintiff in that case, as opposed to the Plaintiff here, did not bring a claim in federal court under the Carmack Amendment. *See generally Beck*, 167 Misc. 2d 960.  Instead, the Becks brought claims arising solely out of state common law in state court. *Id.*  There is no reason to believe that if the Becks had brought their common law claims in federal court, they would not be preempted by the Carmack Amendment.

Plaintiff also cites to *Ensign Yachts, Inc. v. Arrigoni*, No. 3:09-CV-209 VLB, 2012 WL 4372002, at *1 (D. Conn. Sept. 24, 2012), which is an order on a motion for attorney's fees by Lloyds of London, defendant Arrigoni's insurer.  In his explanatory parenthetical, Plaintiff states that this case stands for the proposition of "granting punitive damages and attorney's fees for [a] fraud claim brought with Carmack Amendment claims." Mem. of Law at 8.  That is not entirely accurate.  A review of an earlier dispositive decision by a court on that case shows that the breach of contract claim against Lloyds of London was not preempted by the Carmack

9

Amendment because Lloyds of London is not a "carrier" within the meaning of the statute and therefore not subject to its jurisdiction. *See Ensign Yachts, Inc. v. Arrigoni,* No. 3:09-CV-209 (VLB), 2010 WL 918107 (D. Conn. Mar. 11, 2010). In fact, that same court dismissed all of plaintiff Ensign Yachts' state statutory and common law claims against the defendant carrier Arrigoni specifically because they were preempted by the Carmack Amendment. *See id.* at *5 ("…since the Carmack Amendment preempts each of Ensign's state statutory and common law claims against Arrigoni, these claims are dismissed"). Further, the claims against defendant Arrigoni that were dismissed as preempted included many of the same ones alleged here: breach of contract, violation of the Carmack Amendment, breach of implied contract, negligence, breach of the covenant of good faith and fair dealing, loss of sale, and breach of the Connecticut Unfair Trade Practices Act("CUTPA") (Conn. Gen.Stat. § 42–110b et seq.) *See id.* Notably, CUTPA is the Connecticut analog to the NYDPA. *Compare* Conn. Gen.Stat. § 42–110b(a) ("[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"), *with* N.Y. Gen. Bus. Law § 349(a) (McKinney 2014) ("[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful").

In dismissing plaintiff Ensign's state statutory and common law claims against defendant Arrigoni, that court stated, "[a]lthough Ensign attempts to characterize these claims as alleging liability on a ground that is separate and distinct from the damage to its Yacht, the very authority it cites supports the dismissal of these claims." *See Ensign Yachts*, 2010 WL 918107 at *5. The same is true here. Plaintiff's property lost or damaged is central to all his state statutory and common law claims. His claims of conversion and breach of contract directly arise out of the Defendants' failure to deliver his property as promised. In bringing a claim under the Carmack

Amendment, Plaintiff argues that the Defendants are carriers within the meaning of that statute, but in his negligent misrepresentation and NYDPA claims he argues that the Defendants are not carriers, but brokers. *See* 3d. Am. Compl. ¶ 78, 86-87. The Defendants held themselves out as carriers and accordingly face liability under the Carmack Amendment, which preempts these state and common law claims. *See generally, Cleveland v. Beltman N. Am. Co.,* 30 F.3d 373 (2d Cir.1994). Finally, his claim of fraudulent conversion allows for a recovery of the assets owed to him and improperly conveyed elsewhere, i.e., his property or the value thereof. *See In re Adelphia Recovery Tr.,* 634 F.3d 678, 692 (2d Cir. 2011); *See, e.g., Neshewat v. Salem,* 365 F.Supp.2d 508, 521 (S.D.N.Y.2005) ("[W]here the assets fraudulently transferred no longer exist ... a money judgment may be entered in an amount up to the value of the fraudulently transferred assets.").

Ultimately, the Plaintiff's allegations are that he suffered a loss because he did not receive his property. *See* Hammock Decl. ¶ 16 ("In light of [MSTS]'s conduct, I am fearful that all of my possessions have been lost…."). Attempting to obtain money damages for that loss of his property is the exact issue for which the Carmack Amendment applies. *See Project Hope*, 250 F.3d at 73 n.6 (2d Cir. 2001) ("In enacting [the Carmack Amendment], Congress intended to provide interstate carriers with reasonable certainty and uniformity in assessing their risks and predicting their potential liability…. [it] did this … by preempt[ing][the] shipper's state and common law claims against a carrier for loss or damage to goods during shipment") (internal citations and quotation marks omitted).

    a. <u>Prima Facie Case</u>

"A plaintiff seeking to recover from a carrier for damage to a shipment under the Carmack Amendment must establish a prima facie case by showing delivery in good condition,

arrival in damaged condition, and the amount of damages that resulted from the transportation." *Press Clean Sales, LLC v. Maxum Trans Inc.*, 233 F. Supp. 3d 360, 364–65 (E.D.N.Y. 2017) (citing *Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc.*, 2011 WL 671747, at *3 (S.D.N.Y. 2011); *Missouri Pac. R.R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137 (1964)). The extent of Plaintiff's statements relevant to this inquiry are that the items taken from him were "standard home effects," and "belongings of great personal and sentimental value" which includes his "dress uniform and other memorabilia from [his] time serving with the U.S. Army in Afghanistan," "personal computers" with irreplaceable files, data, and digital photos, as well as "gifts and other keepsakes from [his] childhood." Hammock Decl. ¶ 13-14. He further states that "[s]hould the Court wish, [he] will attempt to form an itemized list of lost effects and their estimated value. *Id.* ¶ 14. "On or around August 20, 2019, Plaintiff's property was returned to him with some damage and missing items." 3d. Am. Compl. ¶ 56. Even a generous reading of these statements does not satisfy the Plaintiff's burden. Plaintiff does not mention the condition of his property when it was taken from him. He does, however, allege that property was either damaged or missing once it was returned, the implication being that it was either in better condition or present before it was taken by Defendants. This would satisfy the second element of arrival in damaged condition. However, Plaintiff fails to allege the *amount* of damages that resulted from the transportation and provides no evidence that would allow the Court to even attempt to calculate such damages. Therefore, even taking Plaintiff's allegations as true, he has failed to establish a prima facie case under the Carmack Amendment. *Concrete Workers Dist. Council Welfare Fund*, 699 F.3d 230 (2d Cir. 2012).

      Accordingly, this Court respectfully recommends that the District Court deny Plaintiff's Motion for Default Judgment with leave to file a renewed Motion for Default Judgment

demonstrating that he is entitled to liability under the Carmack Amendment, with competent evidence on damages, and that his state statutory and common law claims are not duplicative of the Carmack Amendment claim.

## CONCLUSION

This Court respectfully recommends that Plaintiff's Motion for Default Judgment be DENIED with leave to renew with competent evidence on damages. Additionally, this Court respectfully recommends dismissing Counts Two through Six of the Complaint without prejudice.

### A. Objections to this Report and Recommendation

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
September 2, 2021